1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   ANTHONY D DAWKINS,                    Civil No.    09-cv-1053-JLS (POR)

11                           Plaintiff,    **REPORT AND RECOMMENDATION**
                                           **GRANTING DEFENDANTS' MOTION**
12         v.                              **TO DISMISS WITH LEAVE TO**
                                           **AMEND**
13   C BUTLER, Correctional Captain, et al.,
                                           **[Document No. 56]**
14                          Defendants.    **[Document No. 60]**

15                            **I. INTRODUCTION**

16         On February 11, 2010, Plaintiff Anthony Dawkins, a state prisoner proceeding *pro se*, filed a

17   Third Amended Complaint (hereinafter TAC) pursuant to 42 U.S.C. § 1983 alleging eight separate

18   claims,[1] against 20 Defendants,[2] for violations of his First, Eighth and Fourteenth Amendment

19   rights.  (Doc. 26.)  In Claim One, Plaintiff contends Defendants Trujillo, Villa, and Allen used

20   excessive force in violation of the Eighth Amendment.  (TAC at 6-7.)  In Claim Three, Plaintiff

21   contends Defendant Moschetti retaliated against him in violation of the First Amendment.  *Id.* at 9.

22   In Claim Five, Plaintiff contends Defendants falsified reports to place Plaintiff in administrative

23   segregation as a reprisal, in violation of his Eighth and Fourteenth Amendment rights.  *Id.* at 13-19.

24   _____

25         [1] On March 17, 2010, the Court *sua sponte* dismissed Plaintiff's Claims 2, 4, 7, and 8 for failure
     to state a claim.  (Doc. 28.)  Therefore, only Claims 1, 3, 5, and 6 will be addressed in this Report and
26   Recommendation.

27         [2] On March 17, 2010, Defendants  Woodford, Chief Deputy Warden Ochoa, Gower, Smith,
     Ramirez, Barker, and Harmon were terminated from this matter.  (Doc. 28.)  Further, a review of the
28   docket indicates Defendants Allen, Siota, and Villa have not yet been served.  Therefore, only
     Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo, Guevara, Mejia, Ibarra, and Duran
     remain in this case.

In Claim Six, Plaintiff contends Defendants Mejia and Ibarra fabricated charges against him as retaliation in violation of the First Amendment. *Id.* at 18-20. Further, Plaintiff contends Defendant Duran violated his right to due process. *Id.*

On June 18, 2010, Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo, Guevara, Mejia, and Ibarra filed a Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. 56.) On July 17, 2010, Defendant Duran filed a Motion to Dismiss Plaintiff's Third Amended Complaint and Joinder to the June 18, 2010 Motion to Dismiss. (Doc. 60.) For the sake of clarity, the Court will address both Motions to Dismiss in this Report and Recommendation. First, Defendants contend Plaintiff's Claims One, Three, and Five are barred by the statute of limitations. (Doc. 56-1 at 5-6.) Second, Defendants contend Plaintiff's Claim Six fails to state a cognizable claim of retaliation against Defendants Mejia and Ibarra and fails to state a cognizable claim for a due process violation against Defendant Duran. (*Id.* at 6-8; Doc. 60-1 at 3-6.) Third, Defendants contend they are immune from suit in their official capacities under the Eleventh Amendment. (Doc. 56-1 at 8-9; Doc. 60-1 at 6-7.) Fourth, Defendants contend Plaintiff fails to demonstrate he is entitled to injunctive relief. (Doc. 56-1 at 9.) Fifth, Defendants contend Plaintiff fails to plead facts in support of his claim for declaratory relief. *Id.* at 9-10.

On July 6, 2010, Plaintiff filed an Opposition to Defendants' First Motion to Dismiss his Third Amended Complaint. (Doc. 59.) On September 22, 2010, Plaintiff filed an Opposition to Defendant Duran's Motion to Dismiss his Third Amended Complaint. (Doc. 71.) On October 12, 2010, Defendant Duran filed a Reply. (Doc. 74.)

After thorough review of the parties' papers and all supporting documents, this Court RECOMMENDS Defendants' Motions to Dismiss (Doc. 56, 60) be GRANTED with leave to amend.

## II. BACKGROUND

**A.     Factual Background**

**1.     Claim One**

On December 14, 2003, Plaintiff alleges he was placed in the Administrative Segregation Unit ("ASU") on "false allegations of threatening staff." (TAC at 6.) Plaintiff alleges he was shoved

against a wall, his feet were kicked apart, and he was verbally and physically assaulted and struck "three time with a clenched black-gloved fist," *Id.*  Plaintiff contends he suffers periodic rib pain in addition to emotional and psychological distress.  *Id.*  Plaintiff contends Defendants Trujillo, Villa, and Allen "were observed as the officers most likely responsible for the assault and battery on the plaintiff as they were present and either took part in it or failed to do anything to stop it."  *Id.* Plaintiff contends the officers acted "on purpose with the intent to hurt plaintiff with such wanton infliction of pain."  *Id.*

### 2.      Claim Three

On June 16, 2004, Plaintiff contends he had a dispute with Defendant Moschetti regarding his attempt to obtain legal documents for an appeal related to the aforementioned excessive force incident.  (TAC at 9.)  Plaintiff contends Defendant Moschetti placed Plaintiff in ASU under the "false-pretense of 'over-familiarity.'"  *Id.*  Plaintiff contends Defendant Moschetti did this in retaliation for Plaintiff's claim against other officers.  *Id.*  Plaintiff asserts Defendant Moschetti violated his First Amendment rights, as he was "exercising his right to petition the government but placed in segregation as a form of reprisal which was intended to deter him from pursuing litigation."  *Id.*

### 3.      Claim Five

On February 15, 2005, Plaintiff alleges he was escorted to the Program Office for a 602 administrative appeal interview with Lieutenant Gonzalez.  (TAC at 14.)  Plaintiff contends he was then told he was being placed in ASU because of a "personal letter written to a family member describing a female correctional officer's sexual misconduct."  *Id.*  Plaintiff alleges the segregation order was signed by Defendants Butler and Gonzalez.  *Id.*

On February 24, 2005, Plaintiff contends he went before the Classification Committee, which informed Plaintiff that he was placed in ASU for the charge of "over-familiarity."  *Id.* Plaintiff alleges the charge was authored by Defendant Guevara.  On May 13, 2005, Plaintiff contends he was interviewed by Defendant Stratton with regard to "allegations against Guevara involving sexual misconduct, falsifying reports and false-imprisonment within a prison as a form of reprisal."  *Id.*  Plaintiff alleges he resisted Defendant Guevara's sexual advance and was placed in ASU in

1  retaliation for his resistance.  *Id.*

2      On August 9, 2005, Plaintiff alleges he was found guilty of the fabricated charge of "over-

3  familiarity" by Defendant Ries, "who deprived the plaintiff of the right to a fair and impartial

4  hearing officer, did not investigate the facts, and did not afford the plaintiff with due process as a

5  means of retaliation."  *Id.* at 16.

6      On October 24, 2005, the above charges were reheard by Lieutenant Davis, who determined

7  Defendant Guevara did not work on the date in which she alleged Plaintiff became "over-familiar"

8  with her, and Plaintiff was subsequently found not guilty of the charge, following eight months in

9  ASU.  *Id.*

10     Plaintiff contends Defendant Guevara fabricated a report of "over-familiarity" in retaliation

11  against Plaintiff.  *Id.*  Plaintiff contends Defendants Butler and Gonzales conspired with Defendant

12  Guevara to falsify a report to place Plaintiff in segregation as a reprisal, in violation of his Eighth

13  and Fourteenth Amendment rights.  *Id.* at 16-17.  Also, Plaintiff contends Defendant Stratton failed

14  to investigate the facts provided to him by Plaintiff regarding Defendant Guevara's report against

15  Plaintiff.  *Id.* at 17.

16      **4.    Claim Six**

17      On May 28, 2005, while in the ASU, Plaintiff contends he was accused of indecent exposure

18  while showering near Defendants Mejia and Ibarra.  (TAC at 18.)  Plaintiff contends this was an

19  attempt to have his confinement in ASU extended.  *Id.*  Plaintiff contends Defendants Mejia and

20  Ibarra fabricated these charges in retaliation for Plaintiff "exposing one of their fellow correctional

21  officers sexual misconduct which was his First Amendment right."  *Id.* at 19.

22      On October 15, 2005, Plaintiff alleges he was found guilty of the charge by Defendant

23  Duran, who was not impartial.  Plaintiff contends Defendant Duran was not impartial because he had

24  found Plaintiff guilty of over-familiarity under different circumstances on a previous occasion.  *Id.*

25  Further, Plaintiff contends "Duran had a predisposition to find plaintiff guilty, he even refused to

26  consider a written statement which was prepared by the plaintiff at the time of the hearing."  *Id.*

27  Plaintiff contends Defendant Duran violated his due process rights by disregarding evidence during

28  a disciplinary hearing.  *Id.* at 20.

09cv1053

1    Plaintiff contends criminal charges were filed against him, and he was found not guilty at a

2    subsequent trial. *Id.* at 19.

3    **B.      Procedural Background**

4          On May 11, 2009, Plaintiff, an inmate at Kern Valley State Prison, filed a civil rights

5    complaint. (Doc. 1.)  On August 31, 2009, the Court dismissed Plaintiff's complaint for failure to

6    state a claim. (Doc. 15.)  On September 21, 2009, Plaintiff filed a First Amended Complaint.  (Doc.

7    17.)  Again, the Court dismissed Plaintiff's First Amended Complaint for failing to state a claim.

8    (Doc. 19.)  On December 11, 2009, Plaintiff filed a Second Amended Complaint, which the Court

9    subsequently denied for failure to state a claim.  (Doc. 20, 21.)

10          On February 11, 2010, Plaintiff filed the instant Third Amended Complaint.  (Doc. 26.)  On

11   June 18, 2010, Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo, Guevara, Mejia, and

12   Ibarra filed a Motion to Dismiss Plaintiff's Third Amended Complaint.  (Doc. 56.)  On July 17,

13   2010, Defendant Duran filed a Motion to Dismiss Plaintiff's Third Amended Complaint and Joinder

14   to the June 18, 2010 Motion to Dismiss.  (Doc. 60.)

15                              **III. STANDARD OF REVIEW**

16   **A.      Rule 12(b)(6) Motions to Dismiss**

17          A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

18   12(b)(6) tests the legal sufficiency of the claims in the complaint.  *See Davis v. Monroe County Bd.*

19   *of Educ.*, 526 U.S. 629, 633 (1999).  "The old formula –- that the complaint must not be dismissed

20   unless it is beyond doubt without merit –- was discarded by the *Bell Atlantic* decision [*Bell Atl.*

21   *Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]."  *Limestone Dev. Corp. v. Vill. of Lemont*, 520

22   F.3d 797, 803 (7th Cir. 2008).

23          A complaint must be dismissed if it does not contain "enough facts to state a claim to relief

24   that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.  "A claim has facial plausibility when

25   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

26   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949

27   (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable

28   inferences to be drawn from them, and must construe the complaint in the light most favorable to the

plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Bell Atl. Corp. v. Twombly*, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11 F.3d 865, 868 (9th Cir. 1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider*, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993).

//

//

**B.      Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Id.; see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim-Panahi*, 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.      Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

//

//

1

## IV. DISCUSSION

2    **A.       Claims One, Three and Five**

3          In Claim One, Plaintiff contends Defendants Trujillo, Villa, and Allen used excessive force

4    in violation of the Eighth Amendment.  (TAC at 6-7.)  In Claim Three, Plaintiff contends Defendant

5    Moschetti retaliated against him in violation of the First Amendment.  *Id.* at 9.  In Claim Five,

6    Plaintiff contends Defendants falsified reports to place Plaintiff in administrative segregation as a

7    reprisal, in violation of his Eighth and Fourteenth Amendment rights.  *Id.* at 13-19.  Defendants

8    contend the statute of limitations bars Plaintiff's Claims One, Three, and Five.  (Doc. 56-1 at 5-6.)

9          Because section 1983 contains no specific statute of limitation, federal courts apply the

10   forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927

11   (9th Cir. 2004);  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004), cert. denied sub nom.

12   *Kempton v. Maldonado*, 125 S. Ct. 1725 (2005); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).

13   Until December 31, 2002, the applicable statute of limitations for a personal injury claim in

14   California was one year.  *See Jones*, 393 F.3d at 927 (citing Cal. Civ. Proc. Code § 340(3) (West

15   2002)).  Effective January 1, 2003, the applicable California statute of limitations was extended to

16   two years.  *Id.* (citing Cal. Civ. Proc. Code. § 335.1 (West 2004)).

17          "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of

18   limitation begins to run, when the wrongful act or omission results in damages."  *Wallace v. Kato*,

19   __U.S. __ , __ , 127 S. Ct. 1091, 1097 (2007).  Unlike the length of the limitations period, "the

20   accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference

21   to state law." Id. at 1095.  "Under federal law, a claim accrues when the plaintiff knows or has

22   reason to know of the injury which is the basis of the action."  *Maldonado*, 370 F.3d at 955; *Fink*,

23   192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985).  Thus, the statute of limitations begins

24   to run when the plaintiff knows or has reason to know of the act providing the basis for his injury

25   has occurred.  *Maldonado*, 370 F.3d at 955; *see also Lukovsky v. City & County of San Francisco*,

26   535 F.3d 1044, 1048 (9th Cir. 2008).  The cause of action accrues even though the full extent of the

27   injury is not then known or predictable."  *Wallace,* 127 S. Ct. at 1097.  "Were it otherwise, the

28   statute would begin to run only after a plaintiff became satisfied that he had been harmed enough,

placing

1  the supposed statute in repose in the sole hands of the party seeking relief." *Id.*

2      Federal courts look to state law in order to determine whether it provides a basis for tolling

3  the statute of limitations. *Wallace*, 127 S. Ct. at 1098-99; *Hardin v. Straub*, 490 U.S. 536, 538-39

4  (1989); *Jones*, 393 F.3d at 927 (in actions where the federal court borrows the state statute of

5  limitation, the federal court should also borrow all applicable provisions for tolling the limitations

6  period found in state law).  Under California law, the two-year statute of limitations is tolled for a

7  period not to exceed two years while a person is "imprisoned on a criminal charge, or in execution

8  under sentence of a criminal court for a term of less than for life."  Cal. Code Civ. P. § 352.1(a)

9      Further, California law provides for equitable tolling of the statute of limitations while

10  exhaustion occurs, regardless of whether or not exhaustion is prerequisite to filing suit. *Donoghue v.*

11  *County of Orange*, 84 F.2d 926, 930-31 (9th Cir. 1988); *Addison v. State of California*, 21 Cal.3d

12  313, 318 (1978).  In addition, the Ninth Circuit has specifically held that "the applicable statute of

13  limitations must be tolled while a prisoner completes the mandatory exhaustion process" required by

14  42 U.S.C. § 1997e(a).  *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

15      Where a defendant moves to dismiss a complaint on the basis that the statute of limitations

16  has run, the court may only grant such a motion if the allegations in the complaint, construed with

17  the required liberality, would not permit the plaintiff to prove the statute was tolled.  *See Supermail*

18  *Cargo Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Cervantes v. City of San Diego*,

19  5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)).

20      As to Claim One, the statute of limitations began to accrue on December 14, 2003, the date

21  on which Plaintiff alleges he was placed in ASU based on false allegations of threatening staff.

22  *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985);

23  TAC at 6.  Including the two year statute of limitations as well as California's two year tolling for

24  individuals imprisoned on criminal charges, Plaintiff should have filed his suit by December 14,

25  2007.  However, Plaintiff did not file his original complaint until May 11, 2009.  (Doc. 1.)  Absent

26  equitable tolling, which Plaintiff does not assert he is entitled to on either the face of his Third

27  Amended Complaint or in his Opposition, Claim One is untimely and therefore procedurally barred.

28  //

As to Claim Three, the statute of limitations began to accrue on June 16, 2004, the date on which Plaintiff alleges Defendant Moschetti placed him in the ASU under the false pretense of over-familiarity.  *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). TAC at 9.  Including the two year statute of limitations as well as California's two year tolling for individuals imprisoned on criminal charges, Plaintiff should have filed his suit by June 16, 2008.  However, Plaintiff did not file his original complaint until May 11, 2009.  (Doc. 1.)  Absent equitable tolling, which Plaintiff does not assert he is entitled to on either the face of his Third Amended Complaint or in his Opposition, Claim Three is untimely and therefore procedurally barred.

As to Claim Five, the statute of limitations began to accrue on February 24, 2005, the date on which Plaintiff alleges he was informed that he was placed in the ASU for the charge of over-familiarity.  *Maldonado*, 370 F.3d at 955; *Fink*, 192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). TAC at 14.  Including the two year statute of limitations as well as California's two year tolling for individuals imprisoned on criminal charges, Plaintiff should have filed his suit by February 24, 2009.  However, Plaintiff did not file his original complaint until May 11, 2009.  (Doc. 1.)  Absent equitable tolling, which Plaintiff does not assert he is entitled to on either the face of his Third Amended Complaint or in his Opposition, Claim Five is untimely and therefore procedurally barred.

Accordingly, the Court hereby RECOMMENDS Defendants' Motion to Dismiss Claims One, Three and Five be **GRANTED** without prejudice.  *See Supermail Cargo Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985))( the court may only grant a motion to dismiss a complaint on the basis that the statute of limitations has run if the allegations in the complaint, construed with the required liberality, would not permit the plaintiff to prove the statute was tolled).

**B.    Claim 6**

In Claim Six, Plaintiff contends Defendants Mejia and Ibarra fabricated charges against him as retaliation in violation of the First Amendment.  *Id.* at 18-20.  Further, Plaintiff contends

09cv1053

1    Defendant Duran violated his right to due process.  *Id.*

2        1.    **Retaliation**

3        Plaintiff contends Defendants Mejia and Ibarra fabricated charges of indecent exposure

4    against Plaintiff in retaliation for Plaintiff exposing one of their fellow correctional officer's,

5    Defendant Guevara's, sexual misconduct.  (TAC at 19.)  Specifically, Plaintiff contends that on May

6    28, 2005, while already in the ASU on charges Plaintiff alleges are false, Plaintiff was accused of

7    indecent exposure while showering by Defendants Mejia and Ibarra.  *Id.* at 18.  Plaintiff contends

8    this retaliation served to justify "Plaintiff's prolonged stay in segregation."  *Id.*

9        In their Motion to Dismiss, Defendants contend Plaintiff has failed to allege sufficient facts

10   to adequately articulate a First Amendment retaliation claim against Defendants Mejia and Ibarra.

11   (Doc. 56-1 at 7-8.)  Specifically, Defendants contend Plaintiff fails to satisfy elements 3, 4, and 5 of

12   the *Rhodes* pleading standard.  *Id.* at 7.

13       In his Opposition, Plaintiff contends he has shown all the required elements for a prima facie

14   retaliation claim.  (Doc. 59 at 9.)  Plaintiff alleges: (1) "Defendants Mejia and Ibarra, state

15   correctional officers, falsified a report of indecent exposure against the Plaintiff which was

16   retaliatory (2) because the Plaintiff reported their colleague for sexual misconduct (3) Plaintiff's

17   Fourteenth Amendment right of due process was hampered by said defendants retaliatory actions to

18   the extent that such action (4) chilled the Plaintiff's exercise of his First Amendment rights, and (5)

19   the action did not advance a legitimate correctional goal."  *Id.* at 9-10.  Specifically, Plaintiff

20   contends:

21           On May 13, 2005, Plaintiff was interviewed on audio cassette, in the administrative
         segregation unit A5, by Defendant Stratton on a category II investigation pertaining to
22       Defendant Guevara's sexual misconduct.  Said interview was conducted in plain view of
         every correctional officer working that day as Plaintiff had been in segregation for (88) days
23       at that point.  As the interview was about to take place the Plaintiff was subjected to the
         glaring facial expressions of correctional officers visibly showing their disapproval.  Two
24       weeks after the interview, on May 28, 2005, Plaintiff was accused of indecent exposure by
         Defendants Mejia and Ibarra.  Defendant Mejia was assigned to the Facility "A" Program
25       Office, 3rd Watch, where her duties were security and escort which included delivering
         Rules Violations Reports to prisoners awaiting charges in general population and
26       administrative segregation.  Mejia frequently handled service of such Rules Violation
         Reports and other paperwork to inmates which made her privy to a lot of information.  The
27       administrative segregation unit was not Mejia's regular post yet she just happened to work
         there on May 28, 2005, on 2d Watch and occupied an elevated vantage point from the
28       observation tower.  Defendant Ibarra was an administrative segregation regular on 3d Watch
         who just happened

1   to work Housing Unit A5 on May 28, 2005, on 2d Watch and Ibarra was privy to all information
2   concerning what took place via ongoing discussion with his colleagues...Plaintiff was falsely
    imprisoned within a prison and tortured psychologically which was quite chilling even if it did not
3   thoroughly chill the exercise of his First Amendment rights as so adamantly pointed out by
    defendants counsel. *Id.* at 10-11.

4       The Constitution provides protections against "deliberate retaliation" by prison officials

5   against an inmate's exercise of his right to petition for redress of grievances. *Soranno's Gasco, Inc.*

6   *v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because retaliation by prison officials may chill an

7   inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it

8   would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d

9   828, 830 (9th Cir. 1989).  However, there must be a causal connection between the allegedly

10  retaliatory conduct and the action that purportedly provoked the retaliation.  Thus, "timing can

11  properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d

12  802, 808 (9th Cir. 1995).  However, a plaintiff must show that the protected conduct was a

13  "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco*, 874 F.2d at

14  1314; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

15      Within the prison context, a viable claim of First Amendment retaliation entails five basic

16  elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because

17  of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

18  First Amendment rights, and (5) was not narrowly tailored to advance a legitimate correctional goal.

19  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

20          **1.    Element 1**

21      Element 1 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state

22  actor took some adverse action against an inmate. *Rhodes*, 408 F.3d at 567-68.  However,

23  Defendants do not assert Plaintiff has failed to meet this element.  Therefore, the Court does not

24  address this issue.

25          **2.    Element 2**

26      Element 2 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state

27  actor took some adverse action against an inmate because he exercised his First Amendment right.

28  *Rhodes*, 408 F.3d at 567-68.  However, Defendants do not assert Plaintiff has failed to meet this

1   element.  Therefore, the Court does not address this issue.

2               **3.      Element 3**

3       Element 3 of the *Rhodes* pleading standard requires Plaintiff to show he exercised protected

4   conduct.  *Rhodes*, 408 F.3d at 567-68.  Defendants assert Plaintiff has failed to meet this element.

5   (Doc. 56-1 at 7.)  Specifically, Defendants contend Plaintiff offers no factual support that

6   Defendants Mejia and Ibarra falsely accused him of indecent exposure in retaliation for filing a

7   claim against another officer.  Defendants contend Plaintiff does not describe the underlying claim

8   and Plaintiff does not allege these Defendants were aware of his complaint against another officer.

9       However, in his Third Amended Complaint, Plaintiff contends he filed an administrative

10  appeal on December 30, 2004.  (TAC at 14.)  Further, Plaintiff contends he informed Defendant

11  Siota during an interview prior to his 602 hearing in the underlying case that "Guevara had falsified

12  her report as a means of placing him in segregation as she was not assigned to work on the date of

13  her fictitious report."  *Id.*  Therefore, Plaintiff satisfies element 3 of the *Rhodes* pleading standard.

14              **4.      Element 4**

15      As to element 4, Defendants contend Plaintiff fails to allege any facts demonstrating

16  Defendants' alleged actions chilled Plaintiff's first amendment rights.  (Doc. 56-1 at 7.)

17      The Court finds Plaintiff does not refer to a single instance in which he attempted to exercise

18  his first amendment right and was thwarted by Defendants.  Further, Plaintiff fails to assert he

19  suffered harm in his Third Amendment Complaint.  *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 807

20  (9th Cir. 1995) (deciding that alleged harm was enough to ground a First Amendment retaliation

21  claim without independently discussing whether the harm had a chilling effect, since harm that is

22  more than minimal will almost always have a chilling effect); *Valandingham v. Bojorquez*, 866 F.2d

23  1135, 1138 (9th Cir.1989) (same).  Although Plaintiff states he was "falsely imprisoned within a

24  prison and tortured psychologically" in his Opposition (Doc. 59 at 11), Plaintiff does allege facts to

25  indicate he suffered harm in his Third Amended Complaint.  The "focus of any Rule 12(b)(6)

26  dismissal . . . is the complaint."  *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197

27  n.1 (9th Cir. 1998).  "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look

28  beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

1    defendant's motion to dismiss." *Id.* (emphasis in original).  Therefore, Plaintiff fails to satisfy

2    element 4 of the *Rhodes* pleading standard.

3        **5.    Element 5**

4        Element 5 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that

5    Defendants' actions did not advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567-68.

6    Defendants contend the fact that Plaintiff was found not guilty of indecent exposure at a subsequent

7    criminal trial "does nothing to diminish the allegations allegedly advanced by defendants Mejia and

8    Ibarra."  (Doc. 56-1 at 7.)  Further, Defendants contend "Plaintiff has not demonstrated he was

9    vindicated at the institutional level, or that defendants Mejia and Ibarra were disciplined for filing a

10    false report." *Id.*

11        Here, Plaintiff fails to plead facts in his Third Amended Complaint that Defendants' actions

12    did not advance a legitimate correctional goal.  However, in his Opposition, Plaintiff insinuates he

13    may have been vindicated at the institutional level and Defendants Mejia and Ibarra may have been

14    disciplined for filing false reports.  (Doc. 59 at 11.)  Nonetheless, "[i]n determining the propriety of

15    a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers,

16    such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider*, 151 F.3d at

17    1197 n.1 (emphasis in original).  Therefore, Plaintiff fails to satisfy element 5 of the *Rhodes*

18    pleading standard.

19        Plaintiff fails to plead sufficient facts to satisfy elements 4 and 5 of the *Rhodes* pleading

20    standard.  However, while the new allegations contained in Plaintiff's Opposition are not relevant to

21    the resolution of the instant motion, it appears Plaintiff may be able to amend his complaint in good

22    faith.  *See Lopez*, 203 F.3d at 1127 (holding the court must give a pro se litigant leave to amend

23    "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

24    Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First

25    Amendment claim against Defendants Mejia and Ibarra be **GRANTED** with leave to amend**.**

26        **2.    Due Process**

27        In Claim Six, Plaintiff contends Defendant Duran violated his right to due process when he

28    found Plaintiff guilty of the charge of indecent exposure.  (TAC 18-20.)  Specifically, Plaintiff

1  contends Defendant Duran was not impartial because he had found Plaintiff guilty of over-

2  familiarity

3  under different circumstances on a previous occasion and therefore had a predisposition to find him

4  guilty. *Id.* at 19.  Further, Plaintiff contends Defendant Duran "even refused to consider a written

5  statement which was prepared by the plaintiff at the time of the hearing." *Id.*  Therefore, Plaintiff

6  contends Defendant Duran violated his due process rights by disregarding evidence during a

7  disciplinary hearing. *Id.* at 20.

8          In his Motion to Dismiss, Defendant Duran contends Plaintiff fails to state a cognizable

9  claim for a due process violation.  (Doc. 60-1 at 3.)  Specifically, Defendant Duran alleges Plaintiff

10  fails to demonstrate he was not impartial. *Id.* at 4.  Further, Defendant asserts Plaintiff's contention

11  his due process rights were violated when Defendant Duran disregarded his written statement is

12  insufficient to state a claim, given that Plaintiff made a physical appearance at the hearing. *Id.* at 5-

13  6.

14          In his Opposition, Plaintiff asserts that Defendant Duran did not afford him the opportunity

15  to call witnesses and time constraints were not met.  (Doc. 71 at 5.)  Further, Plaintiff argues he

16  "prepared a written statement for the disciplinary hearing which was essentially omitted from the

17  fact-finding process by Defendant Duran though the statement was later recorded." *Id.*  Plaintiff

18  states "Defendant Duran placed Plaintiff's written statement underneath a file upon his desk then

19  proceeded to pronounce the Plaintiff guilty without ever having read it." *Id.*

20          To plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or

21  property interest exists and has been subject to interference by the state; and (2) the procedures

22  attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky*

23  *Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1990).

24          Section 1983 is not itself a source of substantive rights, but merely provides a method for

25  vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

26  The requirements of procedural due process apply only to the deprivation of interests encompassed

27  by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408

28  U.S. 564, 569 (1972).

        In addition to liberty interests that arise directly from the Constitution, however, courts have

09cv1053

1   long recognized that state prison regulations may give rise to liberty interests that are protected by

2

3   the Fourteenth Amendment.  *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976); *Wolff*, 418 U.S. at

4    557-58.  Nonetheless, the interest created by the regulation must be something more than freedom

5   from the restrictions ordinarily contemplated by a prison sentence.  *Sandin v. Conner*, 115 S. Ct.

6   2293 (1995).  The interests created by state prison regulations are "generally limited to freedom

7   from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise

8   to protection by the Due Process Clause of its own force, nonetheless impose[] atypical and

9   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 2300

10   (citations omitted).

11          With regard to procedural safeguards, the basic requirements of due process are the right to

12   notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Logan v.*

13   *Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982).  The extent and manner of determining what

14   process is due in any given situation depends on "(1) the private interests at stake; (2) the risk that

15   the procedure used will lead to erroneous results and the probable value of the suggested procedural

16   safeguard; (3) and the governmental interest affected." *Little v. Streeter*, 452 U.S. 1 (1981); *see also*

17   *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  This "balancing test" determines what the due

18   process clause requires, even if state law or prison regulations call for something different.

19   *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Vitek v. Jones*, 445 U.S. 480, 491

20   (1980).

21          The Supreme Court has consistently held that prisoners "may not be deprived of life, liberty,

22   or property without due process of law," and has identified certain minimum procedures required by

23   the Due Process Clause which "insure that a state-created right is not arbitrarily abrogated." *Wolff v.*

24   *McDonnell*, 418 U.S. 539, 556-57 (1973) (citations omitted).  Prisoners facing a disciplinary hearing

25   are entitled to: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a

26   written statement indicating upon what evidence the fact finders relied and the reasons for the

27   disciplinary action; (3) the opportunity to call witnesses and present documentary evidence when

28   doing so will not be unduly hazardous to institutional safety or correctional goals; and (4) an

impartial fact finder.  *Id.* at 564-71.

1    Once the court has decided that these minimal procedural due process requirements have

2    been met, its only remaining function is to determine whether there is "some evidence" in the record

3    that could support the conclusion reached by the disciplinary board.  *Superintendent, Mass.*

4    *Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985).

5    Here, Plaintiff fails to allege any facts demonstrating he was subjected to a deprivation not

6    ordinarily contemplated by a prison sentence.  *Sandin*, 115 S. Ct. At 2293.  In his Opposition,

7    Plaintiff contends that as a result of Defendant Duran depriving him of due process at his hearing,

8    Plaintiff was taken from "A-5 Administrative Segregation Unit and placed in C-6 ASU, which was

9    more restrictive and the Plaintiff was deprived of law library access for the remainder of him time at

10   Calipatria State Prison."  (Doc. 71 at 6.)   However, "[i]n determining the propriety of a Rule

11   12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such

12   as a memorandum in opposition to a defendant's motion to dismiss."  *Schneider*, 151 F.3d at 1197

13   n.1 (emphasis in original).  Furthermore, the Ninth Circuit has held state prisoners have no liberty

14   interest protected by procedural due process concerning  placement in administrative segregation.

15   *Peoples v. Schwarzenegger*, 2010 WL 4296667 (9th Cir. Oct. 29, 2010).  Therefore, Plaintiff fails to

16   assert facts demonstrating he was deprived of a liberty interest.

17   Moreover, Plaintiff fails to demonstrate he was not afforded the basic requirements of

18   procedural due process, the right to notice and the opportunity to be heard "at a meaningful time and

19   in a meaningful manner."  *Logan*, 455 U.S. at 437.  First, Plaintiff's contention that Defendant

20   Duran disregarded his written statement is insufficient to demonstrate a due process violation.  As

21   Defendant Duran correctly notes, Plaintiff does not contend the content of the purported written

22   statement was any different from the verbal defense he presumably presented, nor has Plaintiff

23   alleged he was prevented from simply reading the statement aloud, which would have preserved it

24   for the record.  Second, Plaintiff fails to assert sufficient facts demonstrating Defendant Duran was

25   not impartial at the October 15, 2005 hearing.  Although Defendant Duran previously found Plaintiff

26   guilty of over-familiarity in an unrelated incident, Plaintiff does not assert facts demonstrating

27   Defendant Duran was biased at his October 15, 2005 hearing.  Third, Plaintiff asserted he was

28   denied an opportunity to call witnesses in his Opposition, not in his Third Amended Complaint.

1    Because a court may not look beyond the complaint in deciding a Rule 12(b)(6) dismissal, Plaintiff

2    fails to demonstrate Defendant Duran violated his right to due process. *Schneider*, 151 F.3d at 1197

3    n.1.

4            The Court need not determine whether Plaintiff's Opposition sufficiently sets forth facts

5    demonstrating Defendant Duran violated his right to due process at this time.  While the Court has a

6    duty to liberally construe a *pro se* pleading, the "focus of any Rule 12(b)(6) dismissal . . . is the

7    complaint." *Schneider*, 151 F.3d at 1197 n.1.  However, while the new allegations contained in

8    Plaintiff's Opposition are not relevant to the resolution of the instant motion, it appears that Plaintiff

9    may be able to amend his complaint in good faith.  *See Lopez*, 203 F.3d at 1127 (holding the court

10   must give a *pro se* litigant leave to amend "unless it determines that the pleading could not possibly

11   be cured by the allegation of other facts").  Accordingly, the Court RECOMMENDS Defendants'

12   Motion to Dismiss Plaintiff's due process claim against Defendant Duran be **GRANTED** with leave

13   to amend**.**

14   **C.      Qualified Immunity**

15           Plaintiff has sued all Defendants in both their official and individual capacities.  (TAC at 2-

16   4.)  Further, in his prayer for relief, Plaintiff seeks punitive damages against Defendants.  *Id.* at 23.

17   Defendants contend they are immune to suit for damages under the Eleventh Amendment to the

18   extent Plaintiff is suing them in their official capacity.  (Doc. 56-1 at 8-9; Doc. 60-1 at 6-7.)

19           Under the Eleventh Amendment, states are immune from suits for damages brought in

20   federal court.  *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997).  This protection

21   extends to state officials acting in their official capacity.  *Regents of the University of California v.*

22   *Doe*, 519 U.S. 425, 429 (1997).  While the Eleventh Amendment bars a prisoner's section 1983

23   claims against state actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989),

24   it does not bar damage actions against state officials in their personal or individual capacities.  *Hafer*

25   *v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

26           Defendants correctly argue that as state officials they are immune from suit in their official

27   capacity.  (Doc. 56-1 at 8-9; Doc. 60-1 at 6-7.)  However, Plaintiff sues Defendants in both their

28   official and individual capacities.  (TAC at 2-4.)  Accordingly, the Court RECOMMENDS

     Defendants' Motion to Dismiss claims against Defendants in their official capacities be **GRANTED**

1   without further leave to amend, as further amendment would be futile.  *See James v. Giles*, 221 F.3d

2   1074, 1077 (9th Cir. 2000).

3   **D.     Declaratory Relief**

4          In his Third Amended Complaint, Plaintiff requests "[a] declaration that the defendants

5   violated the rights of the plaintiff..."  (TAC at 23.)  Defendants contend Plaintiff's request for

6   declaratory relief is inappropriate because Plaintiff has failed to state a claim for relief as to any of

7   his claims.  (Doc. 56-1 at 10.)  "In a case of actual controversy within its jurisdiction...any court of

8   the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

9   relations of any interested party seeking such declaration..."  28 U.S.C. section 2201.  In light of the

10  fact Plaintiff has failed to state a claim for relief as to any of his claims, the Court RECOMMENDS

11  Defendants' demand that Plaintiff's request for declaratory relief be denied be **GRANTED** without

12  prejudice.

13  **E.     Injunctive Relief**

14         Plaintiff seeks an injunction preventing "this sort of arbitrary and retaliatory treatment in the

15  future."  (TAC at 23.)  Defendants contend this request is improper because Plaintiff has not

16  demonstrated he has been retaliated against.  Further, Defendants contend injunctive relief is moot,

17  as Plaintiff has since been transferred to Kern Valley State Prison, and he makes no allegations

18  against staff at that institution.  (Doc. 56-1 at 9.)

19         A claim is considered moot if it has lost its character as a present, live controversy, and if no

20  effective relief can be granted.  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Where injunctive relief is

21  involved, questions of mootness are determined in light of the present circumstances.  *Mitchell v.*

22  *Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

23         Currently, Plaintiff is housed at the Kern Valley State Prison, where none of the named

24  Defendants works.  (TAC at 1-2.)  Therefore, an injunction ordering the employees of Calipatria

25  State Prison to stop taking retaliatory measures against him would not grant Plaintiff any relief, as

26  Plaintiff is no longer at this institution.  *See Flast*, 392 U.S. at 95.  Accordingly, the Court

27  RECOMMENDS Defendants' demand that Plaintiff's request for injunctive relief be denied against

28  employees at Calipatria State Prison be **GRANTED** without prejudice.

09cv1053

## V. CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that Defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part. The Court RECOMMENDS:

(1)     Defendants' Motion to Dismiss Claims One, Three and Five be **GRANTED** without prejudice;

(2)     Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Defendants Mejia and Ibarra be **GRANTED** with leave to amend**;**

(3)     Defendants' Motion to Dismiss Plaintiff's Due Process claim against Defendant Duran be **GRANTED** with leave to amend;

(4)     Defendants' Motion to Dismiss claims against Defendants in their official capacities be **GRANTED** without further leave to amend;

(5)     Defendants' demand that Plaintiff's request for declaratory relief be denied be **GRANTED** without prejudice;

(6)     Defendants' demand that Plaintiff's request for injunctive relief be denied against employees at Calipatria State Prison be **GRANTED** without prejudice.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **February 22, 2011**.  This document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed **no later than 10 days** after being served with the objections. *The parties are advised that no extensions of time will be granted for purposes of filing objections.* The parties are further advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**
DATED:  January 28, 2011

_____
LOUISA S PORTER
United States Magistrate Judge

cc:        The Honorable Janis L. Sammartino
            all parties

- 20 -

09cv1053