1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   ANTHONY D. DAWKINS,                    Civil No.    09-cv-1053-JLS (POR)

11                              Plaintiff,  **REPORT AND RECOMMENDATION
                                            GRANTING IN PART AND DENYING
12            v.                            IN PART DEFENDANTS' MOTION TO
                                            DISMISS**
13   C. BUTLER, Correctional Captain, et al.,
                                            **[ECF No. 107][1]**
14                             Defendants.

15                                **I. INTRODUCTION**

16            On April 29, 2011, Plaintiff Anthony Dawkins, a state prisoner proceeding *pro se*, filed a

17   Fourth Amended Complaint (hereinafter FAC) pursuant to 42 U.S.C. § 1983 alleging four separate

18   claims[2] against 10 Defendants[3] for violations of the First, Eighth, and Fourteenth Amendments.

19   (ECF No. 102.)   In Claim One, Plaintiff contends Defendants Trujillo, Villa, and Allen used

20   excessive force in violation of the Eighth Amendment.  (FAC at 8-10.)  In Claim Three, Plaintiff

21   alleges Defendant Moschetti retaliated against him in violation of the First Amendment.  *Id.* at 10.

22   In Claim Five, Plaintiff asserts Defendants Butler and Gonzalez falsified reports to place Plaintiff in

23   administrative segregation as a reprisal, in violation of his Eighth and Fourteenth Amendment rights.

24   ────────────────

25            [1] ECF refers to an Electronic Case Filing on the Federal Judiciary's Case Management/Electronic Case Filing
     (CM/ECF) system.

26            [2] On March 17, 2010, the Court *sua sponte* dismissed Plaintiff's Claims 2, 4, 7, and 8 for failure to state a claim.
27   (ECF No. 28.)  Therefore, only Claims 1, 3, 5, and 6 remain in this case.

28            [3] On March 17, 2010, Defendants  Woodford, Chief Deputy Warden Ochoa, Gower, Smith, Ramirez, Barker, and
     Harmon were terminated from this matter.  (ECF No. 28.)  Further, a review of the docket indicates Defendants Allen, Siota,
     and Villa have not yet been served.  Therefore, only Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo,
     Guevara, Mejia, Ibarra, and Duran remain in this case.

1   *Id.* at 11-13.  Plaintiff also contends Defendants Siota, Stratton, and Ries, deprived Plaintiff of due

2   process and subjected Plaintiff to cruel and unusual punishment, in violation of the Eighth and

3   Fourteenth Amendments.  *Id.* at 12.  In Claim Six, Plaintiff alleges Defendants Mejia and Ibarra

4   fabricated charges against him as retaliation in violation of the First Amendment.  *Id.* at 13-19.

5   Further, Plaintiff argues Defendant Duran violated his right to due process.  *Id.*  Additionally,

6   Plaintiff asserts he is entitled to equitable tolling with regard to Claims One, Three, and Five.  *Id.* at

7   20-21.

8           On May 15, 2011, Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo, Guevara,

9   Mejia, Duran, and Ibarra filed a Motion to Dismiss Plaintiff's Fourth Amended Complaint. (ECF

10  No. 107.)  First, Defendants contend Plaintiff's Claims One, Three, and Five are barred by the

11  statute of limitations.  (ECF No. 107-1 at 5-7.)  Second, Defendants argue Plaintiff's Claim Six fails

12  to state a cognizable claim of retaliation against Defendants Mejia and Ibarra and fails to state a

13  cognizable claim for a due process violation against Defendant Duran.  *Id.* at 7-9.  Third, Defendants

14  maintain Plaintiff fails to demonstrate he is entitled to injunctive relief.  *Id.* at 10.  Fourth,

15  Defendants contend Plaintiff fails to plead facts in support of his claim for declaratory relief.  *Id.* at

16  10.

17          On June 13, 2011, Plaintiff filed a Response in Opposition to Defendants' Motion to

18  Dismiss.  (ECF No. 109.)  On June 20, 2011, Defendants filed a Reply.  (ECF No. 110.)  On

19  September 8, 2011, the Court requested supplemental briefing from the parties regarding Plaintiff's

20  claim for equitable tolling.  (ECF No. 112.)  Defendants filed Supplemental Briefing on October 11,

21  2011, prior to Plaintiff's filing.  (ECF No. 113.)  Plaintiff filed Supplement Briefing on October 13,

22  2011.  (ECF No. 115.)  On November 2, 2011, Defendants filed a second Reply.  (ECF No. 116.)

23  On November 7, 2011, Plaintiff filed a second Supplemental Briefing.  (ECF No. 118.)

24          After thorough review of the parties' papers and all supporting documents, this Court

25  RECOMMENDS Defendants' Motions to Dismiss (ECF No. 107) be **GRANTED IN PART** and

26  **DENIED IN PART** with leave to amend.

27  //

28  //

    //

09cv1053

## II. BACKGROUND

**A.**    **Factual Background**

    **1.**    **Claim One**

On December 14, 2003, Plaintiff alleges he was placed in the Administrative Segregation Unit ("ASU") on "fabricated allegations of threatening staff."  (FAC at 8.)  Plaintiff alleges he was shoved against a wall, his feet were kicked apart, and he was verbally and physically assaulted and "suffered three forceful blows to his ribs."  *Id.*  Plaintiff contends he suffers periodic rib pain as well as emotional and psychological distress.  *Id.*  Plaintiff asserts Defendants Trujillo, Villa, and Allen "are liable for the assault and battery on the Plaintiff as they were present and either took part in it or failed to do anything to stop it."  *Id.* at 9.  Plaintiff maintains "this was a blatant act of  retaliation that did not serve to advance any penological goal whatsoever."  *Id.*  Plaintiff contends the officers acted "with malice with the intent to hurt the Plaintiff with a wanton infliction of pain."  *Id.*

    **2.**    **Claim Three**

On June 16, 2004, Plaintiff contends he had a dispute with Defendant Moschetti regarding his attempt to obtain legal documents for an appeal related to the aforementioned excessive force incident.  (FAC at 10.)  Plaintiff alleges Defendant Moschetti placed Plaintiff in ASU under the "false-pretense of 'over-familiarity.'"  *Id.*  Plaintiff contends Defendant Moschetti did this in retaliation for Plaintiff's claim against other officers.  *Id.*  Plaintiff asserts Defendant Moschetti violated his First Amendment rights, as Plaintiff was "attempting to exercise a guaranteed right but placed in segregation as a form of reprisal to deter him from that purpose which served no legitimate penological goal."  *Id.*

    **3.**    **Claim Five**

On February 15, 2005, Plaintiff alleges he was escorted to the Program Office for a 602 administrative appeal interview with Lieutenant Gonzalez.  (FAC at 11.)  Plaintiff contends Defendant Gonzalez told him that he was being placed in ASU because of a personal letter written to a family member describing Defendant Guevara's "sexual misconduct and harassment of the Plaintiff."  *Id.*  Plaintiff alleges the segregation order was signed by Defendants Butler and Gonzalez.  *Id.*

1    On February 24, 2005, Plaintiff contends he went before the Classification Committee,

2    which informed Plaintiff that he was placed in ASU for the charge of "over-familiarity."  *Id.*

3    Plaintiff alleges the charge was authored by Defendant Guevara.  *Id.*

4    On March 8, 2005, Plaintiff contends he was interviewed by Defendant Siota on a 602

5    administrative appeal regarding Defendant Guevara's claim of "overfamiliarity."  *Id.* at 12.  Plaintiff

6    contends Defendant Siota suppressed verifiable information, thereby causing Plaintiff to endure

7    cruel and unusual punishment.  *Id.*

8    On May 13, 2005, Plaintiff maintains Defendant Stratton interviewed him with regard to

9    allegations of "Defendant Guevara's sexual misconduct, false-report, and false-imprisonment within

10   a prison."  *Id.*  Plaintiff alleges "Defendant Stratton failed to investigate the facts and sought to

11   suppress evidence which substantiated Plaintiff's accusations," thereby depriving Plaintiff of his due

12   process rights.  *Id.*

13   On August 9, 2005, Plaintiff contends Defendant Ries violated Plaintiff's due process rights

14   by denying Plaintiff a fair and impartial hearing.  *Id.*  Plaintiff alleges Defendant Ries either knew of

15    the report falsified by Defendant Guevara but suppressed it based on a "code of silence" or

16   purposely avoided discovering it.  *Id.*

17   On October 24, 2005, Plaintiff contends Lieutenant Davis reheard the above charges and

18   determined Defendant Guevara did not work on the date in which she alleged Plaintiff became

19   "over-familiar" with her.  *Id.*  Plaintiff was subsequently found not guilty of the charge, following

20   eight months in ASU.  *Id.*

21   Plaintiff contends Defendants sought to suppress evidence of officer misconduct by

22   conducting mock investigations as a "'smoke-screen' failing to uncover verifiable facts."  *Id.* at 13.

23   **4.     Claim Six**

24   On May 28, 2005, while in the ASU, Plaintiff contends he was accused of indecent exposure

25   while showering near Defendants Mejia and Ibarra.  (FAC at 13.)  Plaintiff alleges this was an

26   attempt to extend his confinement in ASU.  *Id.*  Plaintiff asserts Defendants Mejia and Ibarra

27   fabricated these charges in retaliation for Plaintiff "reporting Defendant Guevara's sexual

28   misconduct." *Id.* at 18.  Plaintiff contends that as a result of Defendant Mejia and Ibarra's allegations

1  against Plaintiff, Plaintiff was moved to a more restrictive ASU and was deprived access to the law

2  library for the rest of his time at Calipatria State Prison.  *Id.*

3         On October 15, 2005, Plaintiff alleges he was found guilty of the charge by Defendant

4  Duran, who was not impartial.  *Id.* at 13.  Plaintiff contends Defendant Duran denied Plaintiff an

5  opportunity to put up a verbal defense and was "inherently incapable of fairness and impartiality

6  toward Plaintiff."  *Id.* at 14.  Plaintiff contends he provided a written statement to the escorting

7  officer, who gave the written statement to Defendant Duran.  *Id.* at 13.  Defendant Duran then placed

8  the statement underneath a file on his desk.  *Id.*  Plaintiff alleges Defendant Duran neither formally

9  read the charge nor afforded Plaintiff an opportunity to speak before pronouncing Plaintiff guilty.

10  *Id.* at 14.  Plaintiff contends Defendant Duran made it clear that he was "relying solely on the word

11  of his fellow officers" and therefore "would not need to consider any other source of information to

12  counter-balance his decision."  *Id.*

13         Plaintiff alleges Defendant Duran had a "predisposition to find him guilty" for various

14   reasons.  First, Plaintiff asserts Defendant Duran exchanged insults with Plaintiff on at least one

15  prior occasion.  *Id.*  Second,  Plaintiff maintains he was "more than casually acquainted" with

16  Defendant Duran from previous disciplinary measures.  *Id.*  Plaintiff contends he previously filed a

17  staff complaint against Defendant Duran for using a cell search as a punitive measure and Defendant

18  Duran found Plaintiff guilty of "over-familiarity" with Defendant Moschetti on a previous occasion.

19  *Id.*

20         Plaintiff contends criminal charges for indecent exposure were filed against him, and he was

21  found not guilty at a subsequent trial.  *Id.* at 20.

22  **B.      Procedural Background**

23         **1.      Previous Case**

24         On June 14, 2007, Plaintiff, an inmate at Kern Valley State prison, filed a civil right

25  complaint.  (*Dawkins v. Woodward*, No. 07-cv-1088-BEN-NLS, ECF Nos. 8, 9.)  The court

26  dismissed Plaintiff's complaint for failure to state a claim.  (ECF Nos.1, 2.)  Plaintiff filed a Second

27  Amended Complaint, which the court also dismissed for failure to state a claim.  (ECF Nos. 8, 9.)

28  On July 28, 2008, Plaintiff filed a Third Amended Complaint.  (ECF No. 11.)  On October 23, 2008,

1   District Judge Benitez issued a Notice of Hearing - Dismissal for Want of Prosecution and set the

2   hearing for December 15, 2008.  (ECF No. 13.)  On December 29, 2008, Judge Benitez issued

3   another Notice of Hearing - Dismissal for Want of Prosecution and reset the hearing for February 2,

4   2009.  (ECF No. 14.)  On January 29, 2009, after both notices but prior to the actual hearing,

5   Plaintiff filed a letter notifying the court that as of December 11, 2008, Plaintiff was placed in

6   administrative segregation.  (ECF No. 16.)  On February 2, 2009, Judge Benitez held a hearing for

7   Dismissal for Want of Prosecution in which no parties appeared.  Judge Benitez dismissed the case

8   for want of prosecution for failure to serve process.  (ECF No. 18.)

9        **2.    Instant Case**

10       On May 11, 2009, Plaintiff filed the original civil rights complaint in the instant case.  (ECF

11   No. 1.)  On August 31, 2009, the Court dismissed Plaintiff's complaint for failure to state a claim.

12   (ECF No. 15.)  On September 21, 2009, Plaintiff filed a First Amended Complaint.  (ECF No. 17.)

13   Again, the Court dismissed Plaintiff's First Amended Complaint for failure to state a claim.  (ECF

14   No. 19.)  On December 11, 2009, Plaintiff filed a Second Amended Complaint, which the Court

15   subsequently denied for failure to state a claim.  (ECF Nos. 20, 21.)  On February 11, 2010, Plaintiff

16   filed a Third Amended Complaint.  (ECF No. 26.)  On June 18, 2010, Defendants Butler, Gonzalez,

17   Stratton, Ries, Moschetti, Trujillo, Guevara, Mejia, and Ibarra filed a Motion to Dismiss Plaintiff's

18   Third Amended Complaint.  (ECF No. 56.)  On July 17, 2010, Defendant Duran filed a Motion to

19   Dismiss Plaintiff's Third Amended Complaint and Joinder to the June 18, 2010 Motion to Dismiss.

20   (ECF No. 60.)  On January 28, 2011, this Court issued a Report and Recommendation granting

21   Defendants' Motion to Dismiss Claims One, Three, Five, and Six without prejudice, denying

22   Plaintiff's request for declaratory and injunctive relief, and dismissing with prejudice Plaintiff's

23   claims against Defendants in their official capacity.  (ECF No. 86.)  On March 14, 2011, the District

24   Judge adopted the Court's Report and Recommendation.  (ECF No. 96.)

25       On April 29, 2011, Plaintiff filed the instant Fourth Amended Complaint.  (ECF No. 102.)

26   On May 15, 2011, Defendants filed a Motion to Dismiss Plaintiff's Fourth Amended Complaint.

27   (ECF No. 107.)  On June 13, 2011, Plaintiff filed a Response in Opposition to Defendants' Motion

28   to Dismiss.  (ECF No. 109.)   On June 20, 2011, Defendants filed a Reply.  (ECF No. 110.)

On September 8, 2011, the Court requested supplemental briefing on the issue of equitable tolling. (ECF No. 112.) Defendants filed Supplemental Briefing on October 11, 2011, prior to Plaintiff's filing. (ECF No. 113.) Plaintiff filed his Supplement Briefing on October 13, 2011. (ECF No. 115.) Defendants filed a second Reply on November 2, 2011, and Plaintiff filed a second Supplemental Briefing on November 7, 2011. (ECF Nos. 116, 118.)

### III. STANDARD OF REVIEW

**A.      Rule 12(b)(6) Motions to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Bell Atl. Corp.*, 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11

1  F.3d 865, 868 (9th Cir. 1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult*

2  *Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a

3  court "is not required to accept legal conclusions cast in the form of factual allegations if those

4  conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to

5  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

6  unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

7      In addition, when resolving a motion to dismiss for failure to state a claim, courts may not

8  generally consider materials outside the pleadings.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d

9  1194, 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th

10 Cir. 1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).

11 "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider*, 151 F.3d at 1197 n.1.

12 This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a

13 motion to dismiss brought pursuant to Rule 12(b)(6).  *Id.*  (citing *Harrell v. United States*, 13 F.3d

14 232, 236 (7th Cir. 1993).

15 **B.      Standards Applicable to Pro Se Litigants**

16     Where a plaintiff appears in propria persona in a civil rights case, the court must construe the

17 pleadings liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles*

18 *Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly

19 important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving

20 liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of

21 claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268

22 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations

23 are not sufficient to withstand a motion to dismiss."  *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733

24 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to

25 state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity

26 overt acts which defendants engaged in that support the plaintiff's claim."  *Jones*, 733 F.2d at 649

27 (internal quotation omitted).

28 ///

1   Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it

2   determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*

3   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*,

4   809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed,

5   the court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim-Panahi*,

6   839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of

7   leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

8   **C.      Stating a Claim Under 42 U.S.C. § 1983**

9   To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

10   acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

11   plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

12   States.  42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th

13   Cir. 1986).

14   **IV. DISCUSSION**

15   **A.      Claims One, Three, and Five**

16   In their Motion to Dismiss, Defendants assert the statute of limitations bars Plaintiff's

17   Claims One, Three, and Five.  (ECF No. 107-1 at 5-7.)  Plaintiff argues he is entitled to equitable

18   tolling while his previous case was pending.  (FAC at 5-7; ECF No. 115 "Pl. Supp.")  The Court will

19   address whether Plaintiff is entitled to equitable tolling regarding Claim One, Three and Five

20   separately below.

21   **1.      Legal Standards**

22   **i.      Statute of Limitations**

23   Because § 1983 contains no specific statute of limitation, federal courts apply the forum

24   state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir.

25   2004);  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004), cert. denied sub nom. *Kempton v.*

26   *Maldonado*, 125 S. Ct. 1725 (2005); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  Effective

27   January 1, 2003, the applicable California statute of limitations for a personal injury claim is two

28   years. *See Jones*, 393 F.3d at 927 (citing Cal. Civ. Proc. Code. § 335.1 (West 2004)).

1    "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of

2    limitation begins to run, when the wrongful act or omission results in damages." *Wallace v. Kato*,

3    549 U.S. 384 , 391, 127 S. Ct. 1091, 1097 (2007). Unlike the length of the limitations period, "the

4    accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference

5    to state law." *Id.* at 1095. "Under federal law, a claim accrues when the plaintiff knows or has

6    reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *Fink*,

7    192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985). Thus, the statute of limitations begins

8    to run when the plaintiff knows or has reason to know of the act providing the basis for his injury

9    has occurred. *Maldonado*, 370 F.3d at 955; *see also Lukovsky v. City & County of San Francisco*,

10   535 F.3d 1044, 1048 (9th Cir. 2008). "The cause of action accrues even though the full extent of the

11   injury is not then known or predictable." *Wallace,* 127 S. Ct. at 1097. "Were it otherwise, the

12   statute would begin to run only after a plaintiff became satisfied that he had been harmed enough,

13   placing the supposed statute in repose in the sole hands of the party seeking relief." *Id.*

14   Federal courts look to state law in order to determine whether it provides a basis for tolling

15   the statute of limitations. *Wallace*, 127 S. Ct. at 1098-99; *Hardin v. Straub*, 490 U.S. 536, 538-39

16   (1989); *Jones*, 393 F.3d at 927 (in actions where the federal court borrows the state statute of

17   limitation, the federal court should also borrow all applicable provisions for tolling the limitations

18   period found in state law). Under California law, the two-year statute of limitations is tolled for a

19   period not to exceed two years while a person is "imprisoned on a criminal charge, or in execution

20   under sentence of a criminal court for a term of less than for life." Cal. Code Civ. P. § 352.1(a)

21   Where a defendant moves to dismiss a complaint on the basis that the statute of limitations

22   has run, the court may only grant such a motion if the allegations in the complaint, construed with

23   the required liberality, would not permit the plaintiff to prove the statute was tolled. *See Supermail*

24   *Cargo Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *Cervantes v. City of San Diego*,

25   5 F.3d 1273, 1275 (9th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)).

26                    **ii.      Equitable Tolling**

27   Equitable tolling is a doctrine "'which operates independently of the literal wording of the

28   Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure

1   fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 369, 2 Cal. Rptr.

2   3d 655, 73 P.3d 517 (2003) (internal citations omitted). "[T]he effect of equitable tolling is that the

3   limitations period stops running during the tolling event, and begins to run again only when the

4   tolling event has concluded.  As a consequence, the tolled interval, no matter when it took place, is

5   tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length

6   of time during which the tolling event previously occurred." *Id.*

7          Federal courts also apply the forum state's law regarding equitable tolling.  *Fink*, 192 F.3d at

8   914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988).  Under California law, a

9   plaintiff must meet three conditions to equitably toll a statute of limitations: (1) he must have

10  diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and

11  (3) the defendants must not be prejudiced by the application of equitable tolling.  *See Hull v. Central*

12  *Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335, 34 Cal. Rptr. 2d 175 (Cal. Ct. App.1994);

13  *Addison v. State of California*, 21 Cal. 3d 313, 316-17, 146 Cal. Rptr. 224, 578 P.2d 941 (Cal.1978);

14  *Fink*, 192 F.3d at 916.

15         **2.     Claim One**

16         Plaintiff contends Defendants Trujillo, Villa, and Allen used excessive force in violation of

17  the Eighth Amendment.  (FAC at 2.)  Plaintiff and Defendants agree that the statute of limitations

18  began to accrue on December 14, 2003, the date on which Plaintiff alleges he was placed in ASU

19  based on false allegations of threatening staff.  (ECF No. 113 "Defs. Supp." at 2; ECF No. 109 at 8.)

20  Including the two year statute of limitations as well as California's two year tolling for individuals

21  imprisoned on criminal charges, Plaintiff should have filed his suit by December 14, 2007.  Plaintiff,

22  however, did not file the original complaint in this case until May 11, 2009.  (ECF No. 1.)

23         Plaintiff argues he is entitled to equitable tolling while his previous case, *Dawkins v.*

24  *Woodward*, No. 07-cv-1088-BEN-NLS, was pending.  (Pl. Supp. at 2.)  Plaintiff further alleges he is

25  entitled to equitable tolling because he lacked access to his legal files while in ASU and amid two

26  prison transfers, first from High Desert State Prison to Centinela State Prison on December 3, 2008,

27  and second to Kern Valley State Prison on February 26, 2009.  (Pl. Supp. at 2; FAC at 5.)   Although

28  Plaintiff maintains he received notice of the Dismissal for Want of Prosecution hearing set for

December 14, 2009 and the hearing reset for February 2, 2009, he argues the denial of law library access "precluded preparation for the above-mentioned hearing." (ECF No. 118 at 6.) Additionally, Plaintiff asserts he filed a letter on January 29, 2009, prior to the hearing, to notify the court that as of December 11, 2008, he was placed in ASU. (Pl. Supp. at 2; ECF No. 118 at 5.) Plaintiff further contends that after the February 26, 2009 transfer, he remained without access to his legal files for a significant amount of time. (ECF No. 118 at 6.) Plaintiff alleges that "[w]hen [he] did gain access to his legal materials he immediately refiled [the] instant action on May 11, 2009, in this court." (FAC at 5.)

With respect to the first element to equitably toll the statute of limitation, Plaintiff asserts he diligently pursued his claim. (Pl. Supp. at 2; ECF No. 118 at 5.) Specifically, Plaintiff contends that he filed a letter notifying the court of his status in ASU and that he filed this action immediately after gaining access to his legal materials. (Pl. Supp. at 2; FAC at 5.) Defendants, however, argue Plaintiff failed to diligently pursue his previous claim because "it was plaintiff's own inaction – failure to serve process– that caused the dismissal." (Defs. Supp. at 3.) Under California law, an action dismissed without prejudice does not toll the statute of limitations. *See Wood v. Elling Corp.*, 20 Cal. 3d 353, 362 (1977) (finding the plaintiff did not diligently pursue his claim when it was dismissed for want of prosecution); *see also Hull*, 28 Cal. App. 4th at 1336. In *Wood*, the California Supreme Court cautioned that "[i]f a timely action dismissed without prejudice were, without more, to have the effect of tolling the statute of limitations during the pendency of that action, an indefinite extension of the statutory period - through successive filings and dismissals - might well result." *Wood,* 20 Cal. 3d at 359-60. Here, the district court dismissed the previous action for want of prosecution because Plaintiff failed to serve process. (*Dawkins v. Woodward*, No. 07-cv-1088-BEN-NLS, ECF No. 18.) Accordingly, the Court finds Plaintiff did not diligently pursue his claim.

With respect to the second element, Plaintiff asserts his situation is due to forces beyond his control, specifically being transferred between prisons or placed in ASU without access to his legal materials. (ECF No. 118 at 5-6.) Defendants, however, contend Plaintiff fails to establish his situation is due to forces beyond his control because "the dismissal of the prior action was not due to an error on the part of the trial court, but due to plaintiff's own failure to serve process." (Defs.

1   Supp. at 4.)  Because Plaintiff failed to serve process, the district court dismissed the action.  Thus,

2   the Court finds Plaintiff's failure to serve process, which resulted in the previous case being

3   dismissed without prejudice, is not attributable to forces outside Plaintiff's control.  *See Hull,* 28

4   Cal. App. 4th at 1336 (finding plaintiff's own failure to comply with provisions of the Code of Civil

5   Procedure did not amount to forces beyond her control).  Accordingly, Plaintiff fails to establish the

6   second element required for equitable tolling.

7        With respect to the third element, Plaintiff asserts that Defendants would not be prejudiced

8   by equitable tolling because the claims in the previous and instant case are similar.  (ECF No. 118 at

9   6.)  Defendants, however, allege that they will be prejudiced if the Court requires them to defend

10   old claims based on the doctrine of equitable tolling.  (Defs. Supp. at 4.)  The Court, however, does

11   not need to address prejudice at this time because Plaintiff has failed to establish the first two

12   elements required for equitable tolling.  *See Hull,* 28 Cal. App. 4th at 1336.  Therefore, Plaintiff is

13   not entitled to equitable tolling between June 14, 2007 and February 9, 2009 while his previous

14   action was pending.  *See id*. at 1335.  Without equitable tolling, the statute of limitation for Claim

15   One ran on December 14, 2007.  Plaintiff filed the instant complaint on May 11, 2009, one year,

16   four months, and twenty-seven days after the statute of limitations for Claim One expired.

17        Plaintiff also contends the Court should equitably toll the time period between December 11,

18   2008 and May 11, 2009, the date Plaintiff filed the original compliant, because he was in ASU

19   without access to his legal files.  (FAC at 5; Pl. Supp. at 2.)  Even if the Court tolled the time

20   between December 11, 2008 and May 11, 2009, such tolling would not affect Plaintiff's Claim One

21   because the statute of limitations had already expired on December 14, 2007.

22        Thus, the Court finds Claim One is time-barred and hereby RECOMMENDS Defendants'

23   Motion to Dismiss Claim One be **GRANTED**.

24        **4.     Claim Three**

25        In Claim Three, Plaintiff contends Defendant Moschetti retaliated against him in violation of

26   the First Amendment.  (FAC at 2-3.)  Both Plaintiff and Defendants agree that the statute of

27   limitations began to accrue on June 16, 2004, the date on which Plaintiff alleges Defendant

28   Moschetti placed him in the ASU under the false pretense of over-familiarity.  (Defs. Supp. at 2;

1   ECF No. 109 at 12.)   Including the two year statute of limitations as well as California's two year

2   tolling for individuals imprisoned on criminal charges, Plaintiff should have filed his suit by June

3   16, 2008.   Plaintiff, however, did not file the original complaint in this case until May 11, 2009.

4   (ECF No. 1.)   As discussed above, Plaintiff argues he is entitled to equitable tolling while his

5   previous case, *Dawkins v. Woodward*, No. 07-cv-1088-BEN-NLS, was pending.   (Pl. Supp. at 2.)

6         Without equitable tolling, the statute of limitation for Claim Three ran on June 16, 2008.

7   Plaintiff filed the original complaint in this case on May 11, 2009, ten months and twenty-five days

8   after the statute of limitations for Claim Three expired.   As set forth above, Plaintiff fails to

9   demonstrate that (1) he diligently pursued his claim and (2) his situation was due to forces beyond

10  his control.   Therefore, Plaintiff is not entitled to equitable tolling between June 14, 2007 and

11  February 9, 2009 while his previous action was pending.   *See Hull,* 28 Cal. App. 4th at 1336;

12  *Addison*, 21 Cal. 3d at 316-17; *Fink*, 192 F.3d at 916.

13        Plaintiff also contends the Court should equitably toll the time period between December 11,

14  2008 and May 11, 2009, the date Plaintiff filed this original compliant, because he was in ASU

15  without access to his legal files.   (FAC at 5; Pl. Supp. at 2.)   Even if the Court tolled this time period,

16  such tolling would not affect Plaintiff's Claim Three because the statute of limitations had already

17  expired on June 16, 2008.

18        Thus, the Court finds Claim Three is time-barred and hereby RECOMMENDS Defendants'

19  Motion to Dismiss Claim Three be **GRANTED**.

20        **4.       Claim Five**

21        In Claim Five, Plaintiff contends Defendants falsified reports to place Plaintiff in ASU as a

22  reprisal, in violation of his Eighth and Fourteenth Amendment rights.   (FAC at 11-13.)   Both

23  Plaintiff and Defendants agree that the statute of limitations began to accrue on February 24, 2005,

24  the date on which Plaintiff alleges he was informed that he was placed in the ASU for the charge of

25  over-familiarity.   (FAC at 11; Defs. Supp. at 2; ECF No. 109 at 12.)   Including the two year statute

26  of limitations as well as California's two year tolling for individuals imprisoned on criminal charges,

27  Plaintiff should have filed his suit by February 24, 2009.   Plaintiff, however, did not file his original

28  complaint until May 11, 2009.   (ECF No. 1.)   As discussed above, Plaintiff argues he is entitled to

1    equitable tolling while his previous case, *Dawkins v. Woodward*, No. 07-cv-1088-BEN-NLS, was

2    pending.  (Pl. Supp. at 2.)

3         Without equitable tolling, the statute of limitation for Claim Five ran on February 24, 2009.

4    Plaintiff filed the original complaint in this case on May 11, 2009, two months and seventeen days,

5    or seventy-six days, after the statute of limitations for Claim Five expired.  As set forth above,

6    Plaintiff is not entitled to equitable tolling between June 14, 2007 and February 9, 2009 while his

7    previous action was pending because he failed to show that (1) he diligently pursued his claim and

8    (2) his situation was due to forces beyond his control.  *See Hull,* 28 Cal. App. 4th at 1336; *Addison*,

9    21 Cal. 3d at 316-17; *Fink*, 192 F.3d at 916.

10        However, Plaintiff also contends the Court should equitably toll the time period between

11   December 11, 2008 and May 11, 2009, the date Plaintiff filed the original compliant, because he was

12   in ASU without access to his legal files.  (FAC at 5; Pl. Supp. at 2.)  Unlike Plaintiff's Claims One

13   or Three, if the Court tolled this time period, Plaintiff's Claim Five would be considered timely.

14   Therefore, the Court must determine whether Plaintiff meets the three elements to equitably toll the

15   statute of limitation under California law for the time he spent in ASU.

16        With respect to the first element, Plaintiff contends he diligently pursued his claims because

17   he filed this action immediately after regaining access to his legal materials.  (FAC at 5.)

18   Specifically, Plaintiff alleges that he lacked access to his legal files while in ASU and amid two

19   prison transfers, first from High Desert State Prison to Centinela State Prison on December 3, 2008,

20   and second to Kern Valley State Prison on February 26, 2009.  (Pl. Supp. at 2; FAC at 5.)  Plaintiff

21   also asserts that on January 29, 2009, Plaintiff wrote a letter notifying the district court that as of

22   December 11, 2008, Plaintiff was placed in ASU.  (Pl. Supp. at 2.)  Plaintiff further contends he

23   remained without possession of his legal files for a significant amount of time after the second

24   transfer.  (FAC at 5.)  The Court finds Plaintiff diligently pursued his claim between December 11,

25   2008 and May 11, 2009.  Although Plaintiff was in ASU without access to his legal files, he took the

26   affirmative step of informing the district court of his status in ASU prior to the previous case's

27   dismissal and Claim Five's expiration.  Additionally, Plaintiff filed this action on May 11, 2009,

28   immediately after regaining access to his legal materials.  Accordingly, Plaintiff satisfies the first

1   element of equitable tolling.

2        With respect to the second element, Plaintiff contends his situation was the product of forces

3   beyond his control.  Specifically, Plaintiff asserts that because he was placed in ASU, he lacked

4   access to his legal files.  (Pl. Supp. at 2.)  Without access to his legal papers, Plaintiff could not have

5   filed this action before the statute of limitations expired on February 24, 2009.  *See Espinoza-*

6   *Matthews v. California,* 432 F.3d 1021, 1026 (9th Cir.2005) ( stating "it is unrealistic to expect [a

7   habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period

8   without access to his legal file") (internal quotation omitted); *see also Reyes v. Martel*, No. 08-CV-

9   0791-JLS-PCL, 2009 WL 857010 (S.D. Cal. Mar. 30, 2009) ("A lack of access to legal materials

10  may constitute extraordinary circumstances beyond a prisoner's control sufficient to establish

11  equitable tolling.").  Although both *Espinoza* and *Reyes* address equitable tolling in the habeas

12  context, the reasoning that a prisoner cannot file a meaningful pleading without access to his legal

13  files applies equally in this scenario.  Thus, Plaintiff's failure to file the instant complaint before

14  Claim Five expired on February 24, 2009, was due to forces beyond his control.  Accordingly,

15  Plaintiff satisfies the second element for equitable tolling under California law.

16       With respect to the third element, the Court finds Defendants would not be prejudiced if the

17  Court equitably tolls the time period between December 11, 2008 and May 11, 2009.  An important

18  consideration is whether the Defendants would be prejudiced in evidence-gathering.  *See Daviton v.*

19  *Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1138 (9th Cir. 2001).  Here, without equitable

20  tolling, Plaintiff's Claim Five expired on February 24, 2009.  Plaintiff filed the instant action on

21  May 11, 2009, only two months and seventeen days, or seventy-six days, after Claim Five expired.

22  Any evidence that existed on February 24, 2009 would likely exist on May 11, 2009, only seventy-

23  six days later, and therefore the Court finds these seventy-six days do not prejudice the Defendants

24  in gathering evidence.  Accordingly, Plaintiff satisfies the third element for equitable tolling under

25  California law.

26       The Court finds Plaintiff satisfies the three elements of equitable tolling under California

27  law.  Therefore, the Court equitably tolls the time period between December 11, 2008 and May 11,

28  2009.  Plaintiff's Claim Five is considered timely, and therefore, the Court hereby RECOMMENDS

Defendants' Motion to Dismiss Claim Five based on Statute of Limitations be **DENIED**.

**B.      Claim 6**

In Claim Six, Plaintiff contends Defendants Mejia and Ibarra fabricated charges against him as retaliation in violation of the First Amendment. *Id.* at 13-14.  Further, Plaintiff contends Defendant Duran violated his right to due process.  *Id.*

**1.      <u>Retaliation</u>**

The Constitution provides protections against "deliberate retaliation" by prison officials against an inmate's exercise of his right to petition for redress of grievances.  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).  However, there must be a causal connection between the allegedly retaliatory conduct and the action that purportedly provoked the retaliation.  Thus, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  However, a plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.  *Soranno's Gasco*, 874 F.2d at 1314; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) was not narrowly tailored to advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff contends Defendants Mejia and Ibarra fabricated charges of indecent exposure against Plaintiff in retaliation for Plaintiff exposing one of their fellow correctional officer's, Defendant Guevara's, sexual misconduct.  (FAC at 18.)  In particular, Plaintiff alleges that on May 28, 2005, while already in the ASU on charges Plaintiff alleges are false, Defendants Mejia and Ibarra accused Plaintiff of indecent exposure while showering.  *Id.* at 13.  Plaintiff asserts this retaliation served "to prolong and justify his confinement in ASU."  *Id.*

Plaintiff maintains on May 13, 2005, Plaintiff gave Defendant Stratton a statement, which

was recorded on audio cassette, alleging Defendant Guevara falsified a report for overfamiliarity against Plaintiff, which was the initial cause for his placement in ASU. *Id.* Plaintiff asserts that Defendant Stratton's investigation was a Category II investigation, which occurred in plain view of all correctional officers working in ASU on May 13, 2005. *Id.* Plaintiff alleges the officers gave him "glaring facial expressions." *Id.* Plaintiff contends two weeks after Defendant Stratton's investigation, Defendants Mejia and Ibarra accused Plaintiff of indecent exposure on May 28, 2005. *Id.* at 17. Plaintiff asserts he quarreled with Defendant Mejia prior to this incident when she worked as a floor officer in Plaintiff's previous housing assignment. *Id.* Additionally, Plaintiff alleges Defendant Mejia frequently delivered Rules Violation Reports to prisoners in the Facility "A" Program Office, "which made her privy to a lot of information" regarding prisoners' rules violations. *Id.* at 18. Plaintiff asserts that although Defendant Mejia did not regularly work in ASU, she "just happened to work" in ASU during Plaintiff's shower rotation on May 28, 2005. *Id.* Further, Plaintiff contends Defendant Mejia worked the control booth, which "gave her an elevated vantage point" while Plaintiff was showering. *Id.* Additionally, Plaintiff asserts Defendant Ibarra regularly worked in ASU and thus would have been aware of Plaintiff's "efforts to bring justice" to other ASU officers, including the officers that Plaintiff claims assaulted him on December 14, 2003.[4] *Id.*

In their Motion to Dismiss, Defendants contend Plaintiff fails to allege sufficient facts to adequately articulate a First Amendment retaliation claim against Defendants Mejia and Ibarra. (ECF No. 107-1 at 9.) In particular, Defendants contend Plaintiff fails to satisfy elements 4 and 5 of the *Rhodes* pleading standard. *Id.*

In his Opposition, Plaintiff contends he has met elements 4 and 5 of the *Rhodes* pleading standard for a prima facie retaliation claim. (ECF No. 109 at 18.) As to element 4, Plaintiff contends that as he recited a rap song in the shower, Defendants Mejia and Ibarra sought to deprive Plaintiff of his First Amendment rights " by falsifying a report of indecent exposure and transferring him to C6-ASU where [he] was deprived of law library access for the remainder of his stay at Calipatria State Prison." *Id.* As to element 5, Plaintiff contends this action "did not reasonably

---

[4] The December 14, 2003 incident refers to Plaintiff's Claim One against Defendants Trujillo, Villa, and Allen for either taking part in or failing to stop an assault on Plaintiff. (FAC at 2.)

09cv1053

advance a legitimate correctional goal except to silence the Plaintiff and to disrupt his litigation activities." *Id.* at 18.  Plaintiff further alleges Defendant Mejia's "[a]ccusations of offensive language were used as a 'smokescreen' to then substantiate the indecent exposure allegations." *Id*

### 1.    Element 1

Element 1 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state actor took some adverse action against an inmate.  *Rhodes*, 408 F.3d at 567-68.  However, Defendants do not assert Plaintiff has failed to meet this element.  Therefore, the Court does not address this issue.

### 2.    Element 2

Element 2 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that a state actor took some adverse action against an inmate because he exercised his First Amendment right. *Rhodes*, 408 F.3d at 567-68.  However, Defendants do not assert Plaintiff has failed to meet this element.  Therefore, the Court does not address this issue.

### 3.    Element 3

Element 3 of the *Rhodes* pleading standard requires Plaintiff to show he exercised protected conduct.  *Rhodes*, 408 F.3d at 567-68.  However, Defendants do not assert Plaintiff has failed to meet this element.  Therefore, the Court does not address this issue.

### 4.    Element 4

Element 4 of the *Rhodes* pleading standard requires Plaintiff to show Defendants' conduct chilled the exercise of Plaintiff's First Amendment rights.  *Id.*  Defendants argue Plaintiff fails to allege any facts demonstrating Defendants' alleged actions chilled Plaintiff's first amendment rights. (ECF No. 107-1 at 9.)  Specifically, Defendants assert Plaintiff does not argue Defendants "impeded him from filing complaints, lawsuits, or any other speech protected by the First Amendment." *Id.* at 9.

To satisfy element 4 of the *Rhodes* standard, Plaintiff must show Defendants' acts had a chilling effect or "harm that is more than minimal."  *See Rhodes*, 408 F.3d at 566-67.  To allege a chilling effect, Plaintiff need not show Defendants "actually inhibited or suppressed" his First Amendment rights.  *Rhodes*, 408 F.3d at 659.  Instead, Plaintiff must show Defendants' acts "would

1   chill or silence a person of ordinary firmness." *Id.* (internal citations omitted).  To allege harm,

2   Plaintiff must demonstrate he suffered more than minimal harm.  *Id.* at 567 n.11; *Pratt v. Rowland*,

3   65 F.3d 802, 807 (9th Cir. 1995) (deciding that alleged harm was enough to ground a First

4   Amendment retaliation claim without independently discussing whether the harm had a chilling

5   effect, since harm that is more than minimal will almost always have a chilling effect).  Plaintiff

6   need not allege harm that would rise to a level of due process violation in order to show a First

7   Amendment retaliation claim.  *Rhodes*, 408 F.3d at 568.

8        In his Fourth Amended Complaint, Plaintiff contends Defendants Mejia and Ibarra retaliated

9   against him for reporting a fellow correctional officer's misconduct to prolong his confinement in

10  ASU and "to deter the Plaintiff from seeking access to the courts." (FAC at 5, 18.)  Plaintiff alleges

11  he remained in ASU, where he "was deprived of access to the law library for the remainder of his

12  stay at Calipatria State Prison," until he was transferred to another prison approximately six and a

13  half months later.  (FAC at 18; ECF No. 109 at 18.)  Plaintiff contends "these denials of access to

14  legal materials and meaningful legal research often hinder complaints from ever being filed or cause

15  them to be untimely and/or deficient when they are."  (FAC at 6.)  Specifically, Plaintiff contends

16  "the true nature of these transfers [to ASU]  was intended to impede and/or disrupt the successful

17  litigation of instant complaint."  *Id.* at 21.  Plaintiff's prolonged time in ASU for allegedly false

18  reasons may chill his first amendment rights.  *See Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997)

19  (holding a ten-day period of confinement as a result of a prison officer's false charge infringed on

20  the plaintiff's First Amendment right to file prison grievances).

21       In the alternative, Plaintiff also alleges harm under *Rhodes*.  Plaintiff contends that as a result

22  of Defendant Mejia and Ibarra's actions, he was "subjected to an atmosphere of psychological

23  torture." (FAC at 15.)  Construing the facts liberally as the Court must, *Karim-Panahi*, 839 F.2d at

24  623, Plaintiff adequately pleads a chilling effect and harm.  Accordingly, Plaintiff satisfies element 4

25  of the *Rhodes* pleading standard.

26       **5.     Element 5**

27       Element 5 of the *Rhodes* pleading standard requires Plaintiff to make an assertion that

28  Defendants' actions did not advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567-68.

1    Defendants contend the fact that Plaintiff was found not guilty of indecent exposure at a

2    subsequent criminal trial "does nothing to diminish the allegations allegedly advanced by defendants

3    Mejia and Ibarra."  (ECF No. 107-1 at 9.)  Further, Defendants contend "Plaintiff has not

4    demonstrated he was vindicated at the institutional level, or that defendants Mejia and Ibarra were

5    disciplined for filing a false report."  *Id.*

6    Although Defendants' contentions may ultimately bear on the strength of Plaintiff's claim,

7    the Court must give Plaintiff the benefit of the doubt at this stage of the proceedings.  *See Karim-*

8    *Panahi*, 839 F.2d at 623.  Plaintiff alleges Defendants Mejia and Ibarra fabricated an indecent

9    exposure allegation "to prolong and justify his confinement in ASU," which did not advance a

10   "legitimate penological goal."  (FAC at 13, 19.)  Further, Plaintiff contends that as a result of

11   Defendants' indecent exposure allegation, Plaintiff was transferred to a more restrictive ASU, where

12   he lacked any access to the law library.  *Id.* at 18.  Plaintiff asserts Defendants intended "to deter the

13   Plaintiff from seeking access to the courts with the motive being to suppress officer misconduct, thus

14   obstructing justice in this matter."  *Id.* at 5.  Filing false charges against Plaintiff to prolong his stay

15   in administrative segregation to deter Plaintiff's access to the courts does not preserve institutional

16   order and discipline and therefore does not advance a legitimate correctional goal.  *See Gray v.*

17   *Hernandez*, 651 F. Supp. 2d 1167, 1184 (S.D. Cal. 2009) (internal citation omitted) (finding no

18   legitimate correctional goal when Defendants filed false charges against Plaintiff and placed him in

19   administrative segregation for attempting to settle a claim prior to his filing a lawsuit).  Therefore,

20   Plaintiff satisfies element 5 of the *Rhodes* pleading standard.

21   Plaintiff pleads sufficient facts to satisfy elements 4 and 5 of the *Rhodes* pleading standard.

22   Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First

23   Amendment claim against Defendants Mejia and Ibarra be **DENIED**.

24   ### 2.    Due Process

25   In Claim Six, Plaintiff contends Defendant Duran violated Plaintiff's right to due process

26   when he found Plaintiff guilty of the charge of indecent exposure.  (FAC at 13-15.)  Specifically,

27   Plaintiff alleges Defendant Duran denied Plaintiff an opportunity to put on a verbal defense and

28   disregarded Plaintiff's written statement before pronouncing Plaintiff guilty.  *Id.* at 14.  Plaintiff also

contends Defendant Duran was not impartial because he exchanged insults with Plaintiff on a previous occasion, found Plaintiff guilty of over-familiarity on a previous occasion, and Plaintiff previously filed a staff complaint against Defendant Duran. *Id.* Thus, Plaintiff contends Defendant Duran violated his due process rights because he was "inherently incapable of fairness and impartiality toward Plaintiff" and disregarded evidence during a disciplinary hearing. *Id.* at 13-14.

In their Motion to Dismiss, Defendants argue Plaintiff fails to state a cognizable claim for a due process violation. (ECF No. 107-1 at 7.) Specifically, Defendants contend Plaintiff fails to demonstrate he was subjected to a deprivation not ordinarily contemplated by a prison sentence. *Id.* at 8. Defendants also argue Plaintiff fails to assert sufficient facts demonstrating Defendant Duran was not impartial at the October 15, 2005 hearing. *Id.*

In his Opposition, Plaintiff maintains that he has alleged sufficient facts demonstrating Defendant Duran denied Plaintiff due process during Plaintiff's hearing. (ECF No. 109-1 at 17.) Plaintiff asserts Defendant Duran only considered the testimony of Defendants Mejia and Ibarra and Plaintiff's alleged priors. *Id.* Plaintiff also maintains he provided a written statement, which Defendant Duran never read. *Id.* Further, Plaintiff argues even if he had the opportunity to put on a verbal defense, which he did not, any verbal defense would have been an inadequate substitute for his written statement because his written statement contained specific questions from the Investigative Employee's Report, which he did not have memorized. *Id.*

To plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1990).

Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).

///

1    In addition to liberty interests that arise directly from the Constitution, however, courts have

2    long recognized that state prison regulations may give rise to liberty interests that are protected by

3    the Fourteenth Amendment. *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976); *Wolf*, 418 U.S. at

4    557-58.  Nonetheless, the interest created by the regulation must be something more than freedom

5    from the restrictions ordinarily contemplated by a prison sentence. *Sandin v. Conner*, 515 U.S. 472,

6    115 S. Ct. 2293 (1995).

7    In *Sandin v. Conner*, the Supreme Court held that state law creates liberty interests deserving

8    protection under the Fourteenth Amendment's Due Process Clause only when the deprivation in

9    question (1) restrains the inmate's freedom in a manner not expected from his or her sentence and

10   (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

11   prison life." *Id.* at 483-84; *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir.,) *cert. denied*, 128

12   S. Ct. 396 (2007).  "*Sandin* requires a factual comparison between conditions in general population

13   or administrative segregation (whichever is applicable) and disciplinary segregation, examining the

14   hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a

15   prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (internal citations omitted).  When

16   conducting the *Sandin* inquiry, courts should look to Eighth Amendment standards as well as the

17   prisoners' conditions of confinement, the duration of the sanction, and whether the sanctions will

18   affect the length of the prisoners' sentence.  *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.

19   2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003); *Keenan v. Hall*, 83 F.3d 1083, 1089

20   (9th Cir. 1996).  The "atypicality" prong of the analysis requires not merely an empirical

21   comparison, but turns on the importance of the right taken away from the prisoner.  *See Carlo v. City

22   of Chino*, 105 F.3d 493, 499 (9th Cir. 1997).

23   With respect to procedural safeguards, the basic requirements of due process are the right to

24   notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Logan v.

25   Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982).  The extent and manner of determining what

26   process is due in any given situation depends on "(1) the private interests at stake; (2) the risk that

27   the procedure used will lead to erroneous results and the probable value of the suggested procedural

28   safeguard; (3) and the governmental interest affected." *Little v. Streeter*, 452 U.S. 1 (1981); *see also*

1   *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  This "balancing test" determines what the due

2   process clause requires, even if state law or prison regulations call for something different.

3   *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Vitek v. Jones*, 445 U.S. 480, 491

4   (1980).

5        The Supreme Court has consistently held that prisoners "may not be deprived of life, liberty,

6   or property without due process of law," and has identified certain minimum procedures required by

7   the Due Process Clause which "insure that a state-created right is not arbitrarily abrogated."  *Wolff v.*

8   *McDonnell*, 418 U.S. 539, 556-57 (1973) (citations omitted).  Prisoners facing a disciplinary hearing

9   are entitled to: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a

10  written statement indicating upon what evidence the fact finders relied and the reasons for the

11  disciplinary action; (3) the opportunity to call witnesses and present documentary evidence when

12  doing so will not be unduly hazardous to institutional safety or correctional goals; and (4) an

13  impartial fact finder.  *Id.* at 564-71.

14                **1. Liberty Interest**

15        As discussed above, state law creates liberty interests deserving protection under the

16  Fourteenth Amendment's Due Process Clause only when the deprivation in question: (1) restrains

17  the inmate's freedom in a manner not expected from his or her sentence and (2) "imposes atypical

18  and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*,

19  515 U.S. at 483-84.

20        With respect to the first prong of the *Sandin* analysis, Plaintiff alleges he was deprived due

21  process during his hearing, and as a result, he was transferred from "A5-ASU and placed in C6-

22  ASU, which was more restrictive in that Plaintiff was deprived of law library access for the

23  remainder of his stay at Calipatria State Prison."  (FAC at 18.)   Plaintiff contends because of this

24  transfer, he lacked access to the law library for approximately six and a half months until he was

25  transferred to another prison.  (*Id.*; ECF No. 109 at 18.)  Prisoners generally have a right to access

26  law libraries, *see Bounds v. Smith*, 430 U.S. 817, 828 (1977), and therefore denial of access to the

27  law library for over six months restrains Plaintiff's freedom in a manner not ordinarily excepted

28  from his sentence.  Accordingly, Plaintiff satisfies the first prong of the *Sandin* analysis.

09cv1053

1    With respect to the second prong of the *Sandin* analysis, Plaintiff alleges that because of this

2    hearing, Plaintiff was moved to a more restrictive ASU, where he was denied access to the law

3    library for over six months. (FAC at 18; ECF No. 109 at 18.)  Specifically, Plaintiff asserts this

4    deprivation is a significant hardship because "denials of access to legal materials and meaningful

5    legal research often hinder complaints from ever being filed or cause them to be untimely and/or

6    deficient when they are."  (FAC at 6.)   When addressing the "atypicality" prong, courts must weigh

7    the importance of the right take away from the prisoner.  *See Carlo*, 105 F.3d at 499.  A prisoner's

8    right to file grievances is of fundamental importance.  *See Rhodes*, 408 F.3d at 567 ("Of fundamental

9    import to prisoners are their First Amendment right[s] to file prison grievances, and to pursue civil

10   rights litigation in the courts. Without those bedrock constitutional guarantees, inmates would be left

11   with no viable mechanism to remedy prison injustices.") (internal citations and quotations omitted).

12   Here, a prisoner's ability to access the courts requires access to legal materials.  By depriving

13   Plaintiff access to the library for over six months, Plaintiff was effectively unable to file any

14   grievances with the court for over six months.  The Court notes this denial is especially significant in

15   light of the fact that Plaintiff asserts he could not file another claim, Claim Five, within the statute of

16   limitations precisely because he was deprived of access to his legal materials on a separate occasion.

17   Thus, Plaintiff sufficiently pleads this transfer and the subsequent denial of access to law libraries

18   for over six months imposed an atypical and significant hardship relative to ordinary prison life.

19   Accordingly, Plaintiff satisfies the second prong of the *Sandin* analysis.

20   Because Plaintiff sufficiently pleads both prongs of the *Sandin* analysis, he has adequately

21   alleged he was deprived of a liberty interest protected by the Fourteenth Amendment.

22                        **2. Procedural Due Process**

23   With respect to the second prong of the due process analysis, Plaintiff adequately pleads

24   Defendant Duran did not afford him the basic requirements of procedural due process, the right to

25   notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *See*

26   *Logan*, 455 U.S. at 437.  Specifically, Plaintiff contends Defendant Duran disregarded Plaintiff's

27   written statement without reading it and denied Plaintiff the opportunity to put up a verbal defense.

28   (FAC at 13-14.)  Plaintiff alleges Defendant Duran pronounced Plaintiff guilty "without giving him

1    an opportunity to speak." *Id.* at 13.  Based on Plaintiff's contentions, Defendant Duran denied

2    Plaintiff an opportunity to present his case in any manner.

3        Further, Plaintiff contends Defendant Duran was not impartial at the October 15, 2005

4    hearing.[5]  (FAC at 14.)  Plaintiff alleges a history exists between him and Defendant Duran.  Plaintiff

5    contends Defendant Duran exchanged insults with Plaintiff on a previous occasion, found Plaintiff

6    guilty of over-familiarity on a previous occasion, and Plaintiff previously filed a staff complaint

7    against Defendant Duran.  *Id.*  Further, Plaintiff contends on the day in question, Defendant Duran

8    disregarded Plaintiff's written statement and denied Plaintiff the opportunity to give a verbal

9    defense.  As a whole, Plaintiff alleges sufficient facts to show Defendant Duran failed to act

10   impartially toward Plaintiff.

11       Plaintiff sufficiently pleads Defendant Duran violated Plaintiff's right to due process.  First,

12   Plaintiff adequately alleges that Defendant Duran deprived him of a liberty interest.  Second,

13   Plaintiff sets forth sufficient facts to allege Defendant Duran deprived him of an opportunity to be

14   heard in a meaningful manner.  Accordingly, the Court RECOMMENDS Defendants' Motion to

15   Dismiss Plaintiff's due process claim against Defendant Duran be **DENIED.**

16   **D.    Declaratory Relief**

17       In his Fourth Amended Complaint, Plaintiff requests "[a] declaration that the defendants

18   violated the rights of the plaintiff . . ."  (FAC at 22.)  Defendants contend Plaintiff's request for

19   declaratory relief is inappropriate because Plaintiff has failed to state a claim for relief as to any of

20   his claims.  (ECF No. 107-1 at 10.)  "In a case of actual controversy within its jurisdiction . . . any

21   court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and

22    other legal relations of any interested party seeking such declaration . . ."  28 U.S.C. § 2201

23    (emphasis added).  This language authorizes, rather than commands, a court to consider a claim for

24   declaratory relief.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942).

25       Pursuant to its discretion, the Court finds adjudicating Plaintiff's claims for declaratory relief

26   would require the same inquiry and yield the same result on the question of liability as Plaintiff's

27

28        [5] Plaintiff's disciplinary hearing on October 15, 2005 violated the requirement in California Code of Regulations.,
     Title 15, section 3320(f)(3) that a disciplinary hearing be held thirty days after issuing the preliminary copy of the discipline
     report.   Because of the delayed hearing, Plaintiff did not receive any loss of Credit.

1  claim for damages – i.e. the court will hold Defendants liable for damages under § 1983 only if the

2  finder of fact determines Defendants violated Plaintiff's constitutional rights.  A Motion to Dismiss

3  is currently pending before the Court, not a motion on the merits of the case.  Thus, Plaintiff's claim

4  is premature.  Accordingly, Defendants' Motion to Dismiss Plaintiff's request for declaratory relief

5  be **GRANTED without prejudice**.

6  **E.      Injunctive Relief**

7         Plaintiff requests injunctive relief but does not specify the type of relief in Plaintiff's Prayer

8  for Relief.  (*See* FAC at 1, 22.)  Defendants contend injunctive relief is moot because Plaintiff has

9  since been transferred from Calipatria State Prison[6] and he makes no allegations against staff at that

10  institution.  (ECF No. 107-1 at 10.)

11         A claim is considered moot if it has lost its character as a present, live controversy, and if no

12  effective relief can be granted.  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Where injunctive relief is

13  involved, questions of mootness are determined in light of the present circumstances.  *Mitchell v.*

14  *Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

15         Currently, Plaintiff is housed at California State Prison- Los Angeles County in Lancaster,

16  California, where none of the named Defendants work.  (FAC at 1-4.)  Therefore, an injunction

17  ordering the employees of Calipatria State Prison to stop taking retaliatory measures against him

18  would not grant Plaintiff any relief, as Plaintiff is no longer at this institution.  *See Flast*, 392 U.S. at

19  95.  Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's request for

20  injunctive relief against employees at Calipatria State Prison be **GRANTED without prejudice**.  If

21  Plaintiff is transferred back to Calipatria State Prison, he may bring a request for injunctive relief

22  against named Defendants working at Calipatria State Prison.

23  *///*

24  *///*

25  *///*

26  *///*

27

28        [6] Defendants claim Plaintiff resides at Kern Valley State Prison.  (ECF No. 107-1 at 10.)  However, in Plaintiff's FAC, Plaintiff claims he is currently incarcerated at California State Prison- Los Angeles County, Lancaster, California.  (FAC at 1.)  Both parties agree that Plaintiff no longer resides at Calipatria State Prison.

# V. CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.  The Court RECOMMENDS:

(1)     Defendants' Motion to Dismiss Claim One be **GRANTED**;

(2)     Defendants' Motion to Dismiss Claim Three be **GRANTED**;

(3)     Defendants' Motion to Dismiss Claim Five be **DENIED**;

(4)     Defendants' Motion to Dismiss Plaintiff's First Amendment claim against Defendants Mejia and Ibarra be **DENIED;**

(5)     Defendants' Motion to Dismiss Plaintiff's Due Process claim against Defendant Duran be **DENIED**;

(6)     Defendants' Motion to Dismiss Plaintiff's request for declaratory relief be **GRANTED without prejudice**;

(7)     Defendants' Motion to Dismiss Plaintiff's request for injunctive relief against employees at Calipatria State Prison be **GRANTED without prejudice**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **December 15, 2011.**   This document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed **no later than 14 days** after being served with the objections. *The parties are advised that no extensions of time will be granted for purposes of filing objections.* The parties are further advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  November 17, 2011

LOUISA S PORTER
United States Magistrate Judge

cc:     The Honorable Janis L. Sammartino
all parties

- 28 -

09cv1053