1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA

10  ANTHONY D. DAWKINS,                    Civil No.    09-cv-1053-JLS (DHB)
11                          Plaintiff,
                                           **REPORT AND**
12           v.                            **RECOMMENDATION**
                                           **GRANTING DEFENDANT G.**
13                                         **SIOTA'S MOTION TO DISMISS**
    C. BUTLER, Correctional Captain, et al. **PLAINTIFF'S FOURTH**
14                                         **AMENDED COMPLAINT**
15                          Defendants.    **[ECF No. 151]**
16

17         Plaintiff Anthony D. Dawkins, a state prisoner proceeding pro se and *in forma*

18  *pauperis*, filed his initial Complaint in this case on May 11, 2009, alleging various civil

19  rights violations under 42 U.S.C. § 1983.  (ECF No. 1.)  The operative complaint is now

20  the Fourth Amended Complaint that Plaintiff filed on April 29, 2012.  (ECF No. 102.)

21  On October 30, 2012, Defendant G. Siota ("Siota") filed a motion to dismiss Plaintiff's

22  claims against him as alleged in the Fourth Amended Complaint.  (ECF No. 151.)[1]

23  Plaintiff filed an opposition to Siota's motion to dismiss on January 29, 2013.  (ECF No.

24  158.)  Siota filed a reply to Plaintiff's opposition on January 31, 2013.  (ECF No. 160.)

25  / / /

26

27         [1] The other defendants remaining in this case filed a motion to dismiss on May 13,
    2011.  (ECF No. 107.)  The Court granted in part and denied in part that motion to
28  dismiss on February 21, 2012.  (ECF Nos. 120, 124.)  At that time, Siota had not yet been
    served.  (ECF No. 133.)

1    After a thorough review of the pleadings, the parties' papers, and all supporting
2    documents, the Court hereby **RECOMMENDS** that Siota's motion to dismiss be
3    **GRANTED** due to Plaintiff's failure to exhaust administrative remedies and Plaintiff's
4    failure to state a claim upon which relief can be granted.

5                                  **I.  PLAINTIFF'S ALLEGATIONS**

6    Plaintiff is a California state prisoner currently incarcerated at California State
7    Prison, Los Angeles County located in Lancaster, California.  (ECF No. 102 at ¶ 1.)  In
8    his Fourth Amended Complaint, Plaintiff asserts civil rights claims against Siota and
9    twelve other defendants (Officers M. Trujillo, Villa, Allen, L.C. Moschetti, M.P. Duran,
10   B. Guevara, C. Butler (Captain), D. Gonzalez, Stratton, Nancy Mejia, Edgar Ibarra and
11   Ries), based on events allegedly occurring when Plaintiff was incarcerated at Calipatria
12   State Prison, located in Calipatria, California.  (*Id.* at ¶¶ 2-13, 39.)  Plaintiff sues each
13   defendant in their individual capacity.  (*Id.* at ¶¶ 2-13.)  Although Plaintiff's Fourth
14   Amended Complaint contains four claims (Claims One, Three, Five and Six), only one
15   claim (Claim Five) contains allegations against Siota.[2]

16   In Claim Five, Plaintiff alleges that on February 15, 2005, he was escorted to the
17   program office for an administrative appeal interview with Defendant Gonzalez.  (*Id.* at
18   ¶ 34.)  Plaintiff contends Defendant Gonzalez told him he was being placed in the
19   Administrative Segregation Unit ("ASU") because Plaintiff had written a personal letter
20   to a family member describing Defendant Guevara's "sexual misconduct and harassment
21   of Plaintiff for the purpose of entrapment."  (*Id.*)  Plaintiff alleges Defendants Butler and
22   Gonzalez signed the segregation order.  (*Id.* at ¶ 35.)

23   _____

24   [2] Claim One of Plaintiff's Fourth Amended Complaint is alleged only against
     Defendants Trujillo, Villa and Allen.  (ECF No. 102 at ¶¶ 27-28.)  Claim Three is alleged
     only against Defendant Moschetti.  (*Id.* at ¶ 33.)  Claim Six is alleged only against
25   Defendants Mejia, Ibarra and Duran.  (*Id.* at ¶¶ 50-52.)  Although Siota maintains that
     Plaintiff asserts claims against him in both Claims Five and Six, the fact that Claim Six
26   references Siota (*id.* at ¶¶ 50, 59) is not the equivalent of asserting a claim against him.
     Instead, the references to Siota in Claim Six appear to be made in order to establish a time
27   line of events.  However, Plaintiff does not allege that Siota was at all connected to the
     factual allegations underlying Claim Six (*i.e.*, Plaintiff's allegations that (a) Defendants
28   Mejia and Ibarra wrongfully accused Plaintiff of indecent exposure while showering, and
     (b) Defendant Duran held a mock hearing on the indecent exposure charge).

Plaintiff contends he went before the classification committee on February 24, 2005, and that the committee informed him he was placed in the ASU for the charge of "overfamiliarity." (*Id.* at ¶ 36.)

Plaintiff contends he was interviewed by Siota on March 8, 2005 in connection with Plaintiff's administrative appeal concerning Defendant Guevara.  (*Id.* at ¶ 37.) Plaintiff contends he "informed Siota that he had been placed in segregation on false allegations."  (*Id.*)  Plaintiff further contends he "apprised [Siota] of verifiable information which [Siota] suppressed," thereby causing Plaintiff "to endure false-imprisonment within a prison which was a form of cruel & unusual punishment."  (*Id.*)[3]

Plaintiff maintains Defendant Stratton interviewed him on May 13, 2005 regarding allegations of "Defendant Guevara's sexual misconduct, false-report, and false-imprisonment within a prison." (*Id.* at ¶ 38.) Plaintiff further alleges "Defendant Stratton failed to investigate the facts and sought to suppress evidence which substantiated Plaintiff's accusations, thereby, depriving Plaintiff of due process rights."  (*Id.*)

Plaintiff contends Defendant Ries violated Plaintiff's due process rights on August 9, 2005 by denying him a fair and impartial hearing.  *Id.*  Plaintiff further alleges Defendant Ries either knew of the report falsified by Defendant Guevara and suppressed it based on a "code of silence" or purposely avoided discovering it.  (*Id.* at ¶ 39.)

Plaintiff contends Lieutenant Davis[4] reheard the above charges on October 24, 2005 and determined Defendant Guevara did not work on the date in which she alleged Plaintiff became "over-familiar" with her. (*Id.* at ¶ 40.) Plaintiff was subsequently found not guilty of the charge, following eight months in the ASU.  (*Id.*)

Plaintiff contends Defendants "knowingly fabricate[d] disciplinary charges against the Plaintiff" and suppressed evidence of officer misconduct by conducting "[m]ock

---

[3] As noted above, Plaintiff also references this alleged interaction with Siota in Claim Six.  (ECF No. 102 at ¶¶ 50, 59.)

[4] Lieutenant Davis is not a defendant in this case.

1  investigations [that] were a 'smoke-screen' failing to uncover verifiable facts." (*Id.* at ¶
2  48.)

3  ## II. BACKGROUND

4  **A.    Plaintiff's Administrative Grievance**

5        Plaintiff's inmate appeals file at Calipatria State Prison contains numerous
6  administrative appeals that were either submitted by Plaintiff on or after March 8, 2005
7  or that were pending at any level of review on or after March 5, 2005. (*See* ECF No. 151-
8  2 at 3:19-4:3, 7-11, 12-33.)[5]  However, Plaintiff's administrative appeals file contains
9  only one appeal submitted by Plaintiff that refers to Siota or Plaintiff's March 8, 2005
10  interview with Siota. (*Id.* at 4:4-6.)  Specifically, Plaintiff submitted an Inmate Appeal
11  Form, 05-0049, on December 30, 2004.  (*Id.* at 4:4-6, 35.)  In this appeal, Plaintiff
12  claimed that Correctional Officers Lewis, Lopez and Guevara engaged in unprofessional
13  and discriminatory misconduct.  (*Id.* at 35.)  Plaintiff claims that Defendant Guevara
14  failed to allow Plaintiff to shower in a timely manner and showed "favoritism . . . on the
15  basis of race in regards to showers, time on the dayroom floor and the over-all program."
16  (*Id.*)  In his appeal Plaintiff requested "that all inmates be treated fairly on the basis of
17  their actions in terms of how they conduct themselves and each individual be judged on
18  his own merit not favoritism."  (*Id.*)

19        Plaintiff also submitted an addendum to his 05-0049 appeal, dated February 15,
20  2005, in which he complains about an interview with Defendant Gonzales regarding
21  Officers Lewis, Lopez and Guevara.  (ECF No. 151-2 at 36.)

22        Following the filing of Plaintiff's 05-0049 appeal, Siota interviewed Plaintiff on
23  March 8, 2005 regarding Plaintiff's "claim that Officer B. Guevara is unprofessional and
24  discriminatory in the performance of her official duties" and Plaintiff's request that an
25  investigation be conducted "into Officer Guevara's conduct regarding racial bias and
26  unconstitutional practices."  (*Id.*)  As set forth in Siota's First Level Appeal Response,

27  _____

28        [5] Page numbers for docketed materials cited in this Report and Recommendation
refer to those imprinted by the Court's electronic case filing system.

1  dated March 16, 2005, Siota also interviewed all individuals with information pertinent

2  to Plaintiff's complaint.  (*Id.*)  Following his investigation, Siota determined that "[t]he

3  staff was exonerated as the investigation clearly established that the staff member's

4  actions were not violations of law or departmental policy."  (*Id.*)

5       Plaintiff requested a Second-Level Review on March 27, 2005.  (*Id.* at 37.)  In his

6  request for Second-Level Review, Plaintiff claimed he was wrongfully placed in the ASU

7  as punishment for accusing Defendant Guevara of over-familiarity.  (*Id.*)  Plaintiff's

8  appeal was denied at the Second-Level Review on April 19, 2005.  (*Id.* at 37, 41-45.)

9       Plaintiff subsequently appealed to the Director's Level Review – the third (and

10  final) level of review – on March 28, 2005.  (*Id.* at 37.)  In his request for Director's

11  Level Review, Plaintiff, for the first time, asserts a claim against Siota, claiming that

12  Siota did not hear his appeal until March 8, 2005 and that Siota exonerated Defendant

13  Guevara "in his mock investigation."  (*Id.*)  Plaintiff's appeal was denied at the Director's

14  Level Review on July 20, 2005.  (*Id.* at 48-49.)

15  **B.    Procedural Background in this Action**

16       Plaintiff filed his initial Complaint in this action on May 11, 2009.  (ECF No. 1.)

17  The Court dismissed the Complaint for failure to pay the filing fee required by 28 U.S.C.

18  § 1914(a) and/or failing to proceed *in forma pauperis*.  (ECF No. 2.)  Plaintiff filed a

19  motion for leave to proceed *in forma pauperis* on June 29, 2009.  (ECF No. 3.)  On

20  August 31, 2009, the Court granted Plaintiff's motion for leave to proceed *in forma*

21  *pauperis* but dismissed Plaintiff's Complaint for failure to state a claim.  (ECF No. 15.)

22  On September 21, 2009, Plaintiff filed a First Amended Complaint, which the Court

23  subsequently dismissed for failure to state a claim.  (ECF Nos. 17, 19.)  On December 11,

24  2009, Plaintiff filed a Second Amended Complaint.  (ECF No. 20.)  Again, the Court

25  dismissed Plaintiff's Second Amended Complaint for failure to state a claim.  (ECF No.

26  21.)  On February 11, 2010, Plaintiff filed a Third Amended Complaint.  (ECF No. 26.)

27  On June 18, 2010, Defendants Butler, Gonzalez, Stratton, Ries, Moschetti, Trujillo,

28  Guevara, Mejia and Ibarra filed a motion to dismiss Plaintiff's Third Amended

1    Complaint.  (ECF No. 56.)  On July 17, 2010, Defendant Duran filed a motion to dismiss
2    Plaintiff's Third Amended Complaint and joinder to the June 18, 2010 motion to dismiss.
3    (ECF No. 60.)  On January 28, 2011, former Magistrate Judge Louisa S Porter issued a
4    Report and Recommendation to grant Defendants' motion to dismiss Claims One, Three,
5    Five and Six without prejudice, deny Plaintiff's request for declaratory and injunctive
6    relief and dismiss with prejudice Plaintiff's claims against Defendants in their official
7    capacity.  (ECF No. 86.)  On March 14, 2011, the District Judge adopted Judge Porter's
8    Report and Recommendation.  (ECF No. 96.)

9        On April 29, 2011, Plaintiff filed the operative Fourth Amended Complaint.  (ECF
10   No. 102.)  On May 13, 2011, Defendants Butler, Gonzalez, Stratton, Ries, Moschetti,
11   Trujillo, Guevara, Mejia, Duran and Ibarra filed a motion to dismiss Plaintiff's Fourth
12   Amended Complaint.  (ECF No. 107.)  On November 17, 2011, Judge Porter issued a
13   Report and Recommendation to grant in part and deny in part Defendants' motion to
14   dismiss.  (ECF No. 120.)  On February 21, 2012, the District Judge adopted in part and
15   declined  to  adopt  in  part  Judge  Porter's  November  17,  2011  Report  and
16   Recommendation.  (ECF No. 124.)

17       At the time the District Judge ruled on Defendants' motion to dismiss, Siota had
18   not yet been served.  (ECF No. 133.)  On October 24, 2012, Defendants' counsel advised
19   the Court that Siota had accepted service and that a motion to dismiss would soon be filed
20   on Siota's behalf.  (ECF No. 148.)

21       On October 30, 2012, Siota filed a motion to dismiss the claims against him as
22   alleged in Plaintiff's Fourth Amended Complaint.  (ECF No. 151.)  Siota's motion to
23   dismiss is based on the following grounds: (1) Plaintiff's claims against Siota are barred
24   because Plaintiff failed to properly exhaust his administrative remedies prior to filing this
25   action, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e);
26   and (2) Plaintiff fails to state a claim against Siota upon which relief can be granted.
27   (ECF No. 151-1 at 1-2.)  On October 31, 2012, the Court provided notice to Plaintiff of
28   Siota's motion to dismiss and set a briefing schedule.  (ECF No. 153.)  On December 26,

2012, the Court ordered Plaintiff to file an opposition to Siota's motion to dismiss.  (ECF No. 157.)  On January 29, 2013, Plaintiff filed an opposition to Siota's motion to dismiss.  (ECF No. 158.)  On January 31, 2013, Siota filed a reply to Plaintiff's opposition.  (ECF No. 160.)

## III.  DISCUSSION

### A.   Legal Standards

#### 1.   Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a [Rule 12(b)(6)] motion to dismiss."  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v.*

*Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## 2.    Standards Applicable to Pro Se Litigants in Civil Rights Actions

"In a civil rights case where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." *Karim–Panahi v. L.A. Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil

1  rights complaint, courts may not "supply essential elements of claims that were not

2  initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir.

3  1982). "Vague and conclusory allegations of official participation in civil rights

4  violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v.*

5  *Cmty. Redev. Agency,* 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations

6  unsupported by facts insufficient to state a claim under § 1983).

7      Nevertheless, a court must give a pro se litigant leave to amend his complaint

8  "unless it determines that the pleading could not possibly be cured by the allegation of

9  other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation

10  omitted) (citing *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir. 1987)). Thus, before a

11  pro se civil rights complaint may be dismissed, the Court must provide the plaintiff with

12  a statement of the complaint's deficiencies. *Karim–Panahi,* 839 F.2d at 623–24. But

13  where amendment of a pro se litigant's complaint would be futile, denial of leave to

14  amend is appropriate. *James v. Giles,* 221 F.3d 1074, 1077 (9th Cir. 2000).

15  **B.**   **Analysis**

16      **1.**   **Exhaustion of Administrative Remedies**

17      Siota asserts in his motion to dismiss that Plaintiff failed to exhaust available

18  administrative remedies as to his claims against Siota.

19      The PLRA provides that "[n]o action shall be brought with respect to prison

20  conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

21  any jail, prison, or other correctional facility until such administrative remedies as are

22  available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory." *Porter v.*

23  *Nussle,* 534 U.S. 516, 524 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001));

24  *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002). Failure to exhaust

25  nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement,

26  which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary

27  judgment "based on the general principle that [s]ummary judgment is on the merits,

28  whereas dismissal of an action on the ground of failure to exhaust administrative

1   remedies is not on the merits." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003);

2   *see also Heath v. Cleary,* 708 F.2d 1376, 1380 n.4 (9th Cir. 1983).  In deciding a motion

3   to dismiss for failure to exhaust administrative remedies, courts may look beyond the

4   pleadings and decide disputed issues of fact.   *Ritza v. Int'l Longshoremen's &*

5   *Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir. 1988) (per curiam). If the district

6   court concludes that the prisoner has not exhausted administrative remedies, the proper

7   remedy is dismissal of the claim without prejudice.  *Id.* at 368 & n.3.

8       The Supreme Court has "held that to properly exhaust administrative remedies

9   prisoners must 'complete the administrative review process in accordance with the

10  applicable procedural rules,' [citation] -- rules that are defined not by the PLRA, but by

11  the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting

12  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

13      The administrative appeal system for inmates in the California prison system is

14  described in Title 15 of the California Code of Regulations:  "Any inmate or parolee

15  under the [California Department of Corrections and Rehabilitation's ("CDCR")]

16  jurisdiction may appeal any policy, decision, action, condition or omission by the

17  department or its staff that the inmate or parolee can demonstrate as having a material

18  adverse effect upon his or her health, safety, or welfare."  CAL. CODE. REGS. tit. 15, §

19  3084.1(a).  Prior to January 28, 2011[6], in order to exhaust administrative remedies, a

20  prisoner must have first attempted to informally resolve the problem with the prison

21  official.  (ECF No. 151-2 at 2:10-28.)  If unsuccessful, the prisoner must have then

22  submitted a formal appeal on an inmate appeal form (*i.e.*, a CDCR Form 602) to the

23  institution's appeals coordinator or appeals office.  (*Id.*)  If the prisoner was not satisfied

24  with the first formal level response, he must have submitted a formal appeal for Second

25  Level Review, which is conducted by the institution head or designee.  (*Id.*)  Finally, the

26  _____

27      [6] The provisions of the California Code of Regulations governing the inmate
grievance process were amended on December 17, 2010, with the current procedures
28  found at CAL. CODE REGS. tit. 15, §§ 3084-3084.8, becoming effective on January 28,
2011.  (ECF No. 151-2 at 2:10-13.)

prisoner must have submitted a formal appeal for Third Level Review to the CDCR's director or the director's designee. (*Id.*) The Director's Level Review decision "shall be final and exhausts all administrative remedies available in the [CDCR]." CAL. DEP'T OF CORRECTIONS OPERATIONS MANUAL, § 54100.11, "Levels of Review"; *see also Barela v. Variz*, 36 F. Supp. 2d 1254, 1257 (S.D. Cal. 1999).

The level of specificity of claims required to exhaust an administrative appeal has been subject to judicial scrutiny. In *Jones*, the Supreme Court "conclude[d] that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." 549 U.S. at 219. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

In California, prisoners are required to lodge their administrative appeal on a CDCR Form 602 which in turn requires that the prisoner "describe the specific issue under appeal and the relief requested." CAL. CODE REGS. tit. 15, § 3084.2(a). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 . . . and addressed through all required levels of administrative review up to and including the third level." *Id.* at § 3084.1(b).

However, case law interpreting California's exhaustion requirement indicates that inmates are not held to rigid specificity standards when detailing their claims in administrative appeals. In *Gomez v. Winslow,* 177 F. Supp. 2d 977 (N.D. Cal. 2001), the court recognized that a prisoner need not provide prison officials "with a preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant" in his  appeal. *Id.* at 983 (quoting *Sheptin v. United States*, 2000 U.S. Dist. LEXIS 17738, at *7 (N.D. Ill. 2000)). The administrative grievance need only put the prison "on notice of facts it should discover during its investigation of the claim." *Id.* (quoting *Sheptin*, 2000 U.S. Dist. LEXIS 17738, *7). In *Irvin v. Zamora*, 161 F. Supp.

2d 1125 (S.D. Cal. 2001), the court held that the basic purposes of the exhaustion requirement are fulfilled if a plaintiff's grievance "present[s] the relevant factual circumstances giving rise to a potential claim." *Id.* at 1134.

Here, to exhaust his administrative remedies against Siota, Plaintiff's initial CDCR Form 602 for his 05-0049 appeal, dated December 30, 2004, must have put the prison on notice of the facts giving rise to a potential claim against Siota. However, Plaintiff's 05-0049 appeal fails to do so. Instead, the appeal asserts that Officers Lewis, Lopez and Guevara had engaged in "a clear pattern of employee misconduct which would suggest discriminatory practices as a subtle form of retaliation" due to Plaintiff's prior administrative grievance in which he had complained of Defendant Guevara's "disrespectful attitude and failure to allow [him] to shower in a timely manner." (ECF No. 151-2 at 35.) Plaintiff's 05-0049 appeal also alleges "[t]here is favoritism being shown on the basis of race in regards to showers, time on the dayroom floor and the over-all program regardless of status. The actions of these staff members [*i.e.*, Officers Lewis, Lopez and Guevara] are inconsistent, un-professional and discriminatory." (*Id.*) Finally, Plaintiff's 05-0049 appeal alleges that Defendant Guevara "is confrontational and shows a habitual predisposition to lie!" (*Id.*)

As Siota argues in his motion to dismiss, Plaintiff's 05-0049 appeal makes no reference to Siota or his March 8, 2005 interview. (ECF No. 151-1 at 14:10-16.) Indeed, the initial appeal could not have put the prison on notice of alleged misconduct occurring during or as a result of Siota's March 8, 2005 interview because the interview had not yet occurred. *See Dixon v. La Rosa*, 2011 U.S. Dist. LEXIS 97655, at *17-18 (E.D. Cal. 2011) ("[T]his grievance cannot serve to exhaust plaintiff's subsequent claims that he suffered retaliatory acts based on the filing of this grievance because it precedes the alleged retaliatory acts."). Therefore, Plaintiff's 05-0049 appeal, December 30, 2004, could not have presented facts giving rise to a potential claim against Siota. It is insufficient that Plaintiff claimed in his request for Third Level Review that Siota conducted a "mock investigation" in order to exonerate Defendant Guevara. (ECF No.

151-2 at 13.)  Inmates must file separate appeals for each grievance and may not change the appeal issue from one level of review to another.  *See Harvey v. Schwarzenegger*, 2009 U.S. Dist. LEXIS 120903, *9 (N.D. Cal. 2009) ("[U]nder the applicable procedural rules, inmates must file separate appeals for each grievance and may not change the appeal issue from one level of review to another.").  Plaintiff's attempt to add new claims at the Third Level Review cannot serve to exhaust Plaintiff's alleged new claims against Siota.  *See Sapp v. Kimbrell*, 623 F.3d 813, 825 (9th Cir. 2010) (concluding that it was proper for prison officials to "decline[] to consider a complaint about [plaintiff's] eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition."); *Dixon*, 2011 U.S. Dist. LEXIS 97655, *18 (finding that "plaintiff's efforts to interject [new] claims at the second level of review . . . are unavailing.").

Further, Plaintiff has not presented any evidence that he ever submitted an appeal against Siota arising out of the March 8, 2005 interview.  In his opposition, Plaintiff suggests the possibility that the "appeals coordinator can not [sic] account for other appeals filed pertaining to defendant Siota which were misappropriated and/or unaccounted for."  (ECF No. 158 at 7:2-3.)  Plaintiff also asserts that the prison's appeals file "does not take into consideration lost or those appeals which were thrown away as consistent with a 'code of silence', or otherwise misappropriated in violation of the First and Fourteenth Amendments to the U.S. Constitution."  (*Id.* at 11:24-25.)  However, Plaintiff never claims that he in fact submitted a separate administrative appeal complaining of Siota's alleged misconduct in connection with the March 8, 2005 interview.  Rather, Plaintiff maintains that he adequately exhausted administrative claims against Siota because he complained of Siota's interview when he requested a Third Level Review in connection with his 05-0049 appeal.  (*Id.* at 5:14-16, 12:14-19.)[7]

---

[7] Plaintiff also claims that he complained of Siota's interview when he sought Second Level Review. (ECF No. 158 at 5:74-14, 12:9-12.) However, Plaintiff's request for Second Level Review made no mention of Siota or the March 8, 2005 interview. (*See* ECF No. 151-2 at 37.)  Moreover, even had Plaintiff raised the issue in his request for Second Level Review it would not suffice to exhaust his administrative remedies.

However, as discussed above, a prisoner does not exhaust administrative remedies when he includes new issues from one level of review to another.

Since Plaintiff failed to exhaust his administrative remedies before filing his Complaint in accordance with the PLRA, the proper remedy is to dismiss any claims against Siota without prejudice.  *See Wyatt*, 315 F.3d at 1120 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").  Accordingly, the Court **RECOMMENDS** that Siota's motion to dismiss Plaintiff's Fourth Amended Complaint on the grounds that Plaintiff failed to exhaust his administrative remedies as to claims against Siota be **GRANTED** and that Plaintiff's claims against Siota should be dismissed without prejudice.

### 2.    Failure to State a Claim

Siota also asserts that his "participation in the handling of [Plaintiff's] inmate complaint in 05-0049, and the manner in which Siota processed this inmate complaint, does not state a claim upon which relief can be granted.  (ECF No. 151-1 at 16:4-6.)

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).  Here, there is no dispute that Siota acted under color of state law as an employee of Calipatria State Prison and/or the CDCR.  Thus, the issue turns on the second inquiry, namely, whether Plaintiff has sufficiently alleged that Siota deprived Plaintiff of any constitutional rights.

### a.    Cruel and Unusual Punishment Claim

Plaintiff alleges that Siota violated his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 102 at 3:19, 12:4-6.)  Specifically, Plaintiff

alleges that Siota's suppression of information received at the March 8, 2005 interview caused Plaintiff to remain in the ASU and "to endure false-imprisonment within a prison which was a form of cruel & unusual punishment." (*Id.* at 12:1-6.)

To prove cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). First, the prisoner must "objectively show that he was deprived of something 'sufficiently serious.'" *Foster v. Runnels,* 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, if the prisoner can show his deprivation was objectively sufficiently serious, he must make "a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *Id.* at 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference claims involve two inquiries. First, the prisoner must show that prison officials were aware of a "substantial risk of serious harm." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837). This requirement may be satisfied if the prisoner "shows that the risk posed by the deprivation is obvious." *Id.* Second, the prisoner must "show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (quoting *Farmer*, 511 U.S. at 844).

Here, the Court concludes that the facts Plaintiff alleges in his Fourth Amended Complaint are sufficient to meet the objective component of the deliberate indifference analysis in that Plaintiff has alleged that he was deprived of something sufficiently serious. Plaintiff alleges that Siota's suppression of information resulted in Plaintiff remaining in the ASU, and that he ultimately remained in the ASU for eight months. (ECF No. 102 at 12:1-6, 12:22-28.) Plaintiff further contends that "[s]egregated inmates are kept in isolation cells designed for the purpose of sensory deprivation and a sinister process of dehumanization which causes most inmates to deteriorate into some form of psychosis. Recreation consists of a chain-linked enclosure inlaid with approx. 40 square ft. of concrete and/or a cage-like cubicle which closely resembles a dog kennel." (*Id.* at

1    13:8-12.)

2         "Exercise has been determined to be one of the basic human necessities protected

3    by the Eighth Amendment." *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993).  In

4    *Thomas*, the Ninth Circuit stated that "[a] prohibition on outdoor exercise of six weeks

5    is a 'sufficiently serious' deprivation to support an Eighth Amendment claim."  611 F.3d

6    at 1151 (citing *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc); *Allen*

7    *v. Sakai*, 48 F.3d 1082, 1086 (9th Cir. 1994)).  Likewise, Plaintiff's allegations that his

8    exercise privileges were significantly impaired for eight months while in the ASU is

9    sufficient to satisfy the first prong of the cruel and unusual punishment analysis in that

10   Plaintiff's Fourth Amended Complaint contains objective allegations of a sufficiently

11   serious deprivation.

12        However, Plaintiff's Fourth Amended Complaint does not allege that Siota was

13   aware of a substantial risk of serious harm or that any risk from administrative

14   segregation was obvious.  Indeed, Siota's alleged involvement occurred in March 2005,

15   less than one month from when Plaintiff was placed in the ASU.  There is no allegation

16   that Siota had knowledge that the confinement in ASU would last for another additional

17   seven months.  In addition, Plaintiff has not sufficiently alleged that Siota had no

18   reasonable justification for placing him in administrative segregation.  Thus, Plaintiff

19   fails to meet the second prong of the cruel and unusual punishment analysis.

20        As a result, Plaintiff's Fourth Amended Complaint fails to state an Eighth

21   Amendment cruel and unusual punishment claim against Siota upon which relief can be

22   granted.  Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the

23   Court GRANT Siota's motion to dismiss Plaintiff's Eighth Amendment cruel and unusual

24   punishment claim against Siota.

25              b.    Due Process Claim

26        In his Fourth Amended Complaint, Plaintiff also alleges that Siota did not afford

27   him adequate due process.  (ECF No. 102 at 3:19-20.

28   / / /

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

However, the Ninth Circuit has held that prisoners have no protected *property* interest in an inmate grievance procedure arising directly from the Due Process Clause. *See Ramirez v. Galaza*, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure")).

In addition, Plaintiff fails to plead facts sufficient to show that Siota deprived him of a protected *liberty* interest. Plaintiff alleges he was denied due process because Siota's interview and investigation into his appeal amounted to a "mock investigation" in order to exonerate Officer Guevara. (ECF No. 102 at 12:1-6, 13:3-5.) However, "[t]he existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient." *Moore v. Brown*, 2012 U.S. Dist. LEXIS 55935, *8-9 (E.D. Cal. 2012) (citing *Ramirez*, 334 F.3d at 860; *Mann*, 855 F.2d at 640).

In *Moten v. Adams*, 2010 U.S. Dist. LEXIS 922131 (E.D. Cal. 2010), the plaintiff brought claims against prison officials arising out of their participation in the processing of his inmate grievances. *Id.* at *9-10. The plaintiff alleged that the manner in which defendants processed and/or answered his grievances violated his due process rights,

1  denied him equal protection and failed to provide him unbiased review.  *Id.* at *10.

2  However, the court dismissed the complaint for failing to state a claim because "[a]

3  prison's grievance process 'is a procedural right only, it does not confer any substantive

4  right upon the inmates.'"  *Id.* at *10 (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th

5  Cir. 1993)).  "An improperly processed inmate grievance does not give rise to a protected

6  liberty interest that implicates the protections of the Fourteenth Amendment."  *Id.* (citing

7  *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).

8      As alleged in the Fourth Amended Complaint, Siota's sole involvement was in the

9  inmate appeal process.  Therefore, to the extent Plaintiff attempts to impose liability on

10  Siota, he cannot do so if the liability is based solely on his involvement in the appeal

11  process.  As a result, Plaintiff's Fourth Amended Complaint fails to state a Fourteenth

12  Amendment due process claim against Siota upon which relief can be granted.

13  Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Court

14  GRANT Siota's motion to dismiss Plaintiff's Fourteenth Amendment due process claim

15  against Siota.

16  **IV. CONCLUSION**

17      The Court submits this Report and Recommendation to United States District

18  Judge Janis L. Sammartino pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local

19  Civil Rule 72.3.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED**

20  that the District Judge issue an order:

21      1.  Approving and adopting this Report and Recommendation;

22      2.  **GRANTING** Siota's motion to dismiss Plaintiff's Fourth Amended

23          Complaint without prejudice due to Plaintiff's failure to exhaust

24          administrative remedies as to Siota prior to filing suit;

25      3.  **GRANTING** Siota's motion to dismiss Plaintiff's Eighth Amendment cruel

26          and unusual punishment claim against Siota on the grounds that Plaintiff

27          fails to state a cognizable claim for relief against Siota; and

28  / / /

4.      **GRANTING** Siota's motion to dismiss Plaintiff's Fourteenth Amendment due process claim against Siota on the grounds that Plaintiff fails to state a cognizable claim for relief against Siota.

IT IS FURTHER ORDERED that **no later than June 3, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be filed with the Court and served on all parties **no later than June 17, 2013**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  May 6, 2013

DAVID H. BARTICK
United States Magistrate Judge